PAUL D. MELVIN, JR., Plaintiff-Appellant, *v.* THE CITY OF WEST FRANKFORT *et al.*, Defendants-Appellees.

Fifth District    No. 80-239

Opinion filed February 23, 1981.

Harry Golter, of Overton, Schwartz & Fritts, Ltd., Andrew M. Schatz, of Sachnoff, Schrager, Jones, Weaver & Rubenstein, Ltd., and Edward Parsons, all of Chicago, for appellant.

Paul M. Caldwell, of Caldwell, Troutt & Alexander, of Benton, for appellees.

Mr. JUSTICE HARRISON delivered the opinion of the court:

This appeal raises the issue of appellant's eligibility as an amputee to be employed as a fireman by the defendant, the City of West Frankfort, Illinois. The plaintiff, Paul D. Melvin, filed his complaint seeking a declaratory judgment in the circuit court of Franklin County on March 12, 1979. In it plaintiff sought a ruling that section 10—2.1—6 of the Illinois Municipal Code (Ill. Rev. Stat. 1977, ch. 24, par. 10—2.1—6) is unconstitutional and void as it restricts the hiring of amputees for duties within municipal fire and police departments in the State of Illinois; he requested attendant remedies including his enforced hiring, back wages and other contingent employment benefits. The trial court denied all relief based upon the pleadings submitted and plaintiff appeals from that judgment. Additionally, Melvin seeks permission to amend his pleadings in this court in order to make a claim against West Frankfort pursuant to the Federal civil rights statute (42 U.S.C. §1983 (1976)). Appellant asks us to determine whether the present refusal of employment is violative of article I, section 19 of the Illinois Constitution of 1970 which in pertinent part forbids discrimination against the physically handicapped unrelated to individual ability. Also presented are the allied issues of whether appellant was denied employment in violation of the due process and equal protection provisions of the constitutions of either the State of Illinois or the United States. Also raised is the contingent question of whether he is entitled to maintain an action for compensatory damages if it be determined that the municipality engaged in the enforcement of an unconstitutional statute. We reverse and remand.

The record in this cause is limited to the pleadings which consist of a "Complaint For Declaratory Judgment" with certain exhibits appended, defendant's response in the form of a combined motion to dismiss or in the alternative to strike portions of the complaint, and memoranda in support of and opposition to the defendant's motion. By order defendant's motion has been treated as a motion for judgment on the pleadings limited to the threshold question of the constitutional validity of section 10—2.1—6 as it has been applied to the plaintiff.

It can be ascertained from the facts asserted in the pleadings that Melvin applied to the Board of Fire and Police Commissioners of West Frankfort in hope of obtaining work as a regular duty fireman, submitting to the required physical and written examinations in the summer of 1978.

He received satisfactory marks and would otherwise have been entitled to placement on an employment eligibility list had it not been for an opinion rendered by the defendant's city attorney. He was informed by letter of September 5, 1978, that he could not be placed on the list for the sole reason that section 10—2.1—6 (Ill. Rev. Stat. 1977, ch. 24, par. 10—2.1—6) forbade his employment. The statute, a subparagraph of the Illinois Municipal Code of 1961 concerned with the examination of applicants, applicant disqualifications, and the removal of employees of the various boards of fire and police commissioners, dictates that:

> "The examinations shall be practical in character and relate to those matters which will fairly test the capacity of the persons examined to discharge the duties of the positions to which they seek appointment. No person shall be appointed to the police or fire department if he does not possess a high school diploma or an equivalent high school education. The examinations shall include tests of physical qualifications and health. *No person shall be appointed to the police or fire department if he has suffered the amputation of any limb unless the applicant's duties will be only clerical or as a radio operator.*" (Emphasis added.)

Although the complaint declares that plaintiff has suffered the amputation of one of his legs below the knee, it asserts that he has been able to perform the duties required of a fireman. This is said to be demonstrated by his successful completion of the examinations referred to and by his service as an auxiliary fireman for the defendant. Attached as an exhibit is a letter signed by West Frankfort Fire Chief Thomas Aaron stating that plaintiff's performance as a volunteer had been satisfactory and without limitation.

Appellant's counsel cites article I, section 19 of the Illinois Constitution of 1970 in the complaint alleging that its provisions invalidate the amputee legislation. The Illinois Bill of Rights requires that:

> "All persons with a physical or mental handicap shall be free from discrimination in the sale or rental of property and shall be free from discrimination unrelated to ability in the hiring and promotion practices of any employer." (Ill. Const. 1970, art I, §19.)

In count II counsel charges that the statutory provision and its application to the plaintiff violate the fourteenth amendment of the Federal Constitution by denying him due process and equal protection of the law. On May 1, 1980, the trial court held the statute constitutional under both the Illinois Constitution and the fourteenth amendment of the United States Constitution.

A motion for judgment on the pleadings admits as true the well-pleaded facts contained within the pleadings of the opposing party, as well as all fair inferences that may be derived from them. (*A. A. Erickson*

*Bros. v. Jenkins* (1963), 41 Ill. App. 2d 180, 188, 190 N.E.2d 383.) We must accept as fact what is evident from the pleadings, namely that the denial of employment is wholly based upon a positive statutory prohibition binding upon the cities and villages governed by the Municipal Code.

Upon first examining the merits of the case we see that section 10—2.1—6, when considered as a whole, serves primarily to delineate rules of eligibility for employment and procedures for hiring; among the former are age, education, health, and character qualifications. All of these categories are subsumed within the subject matter of employment practices. When enacted in 1967 the portion of section 10—2.1—6 here under attack must necessarily have been intended to insure quite literally that able-bodied and fully qualified persons were to be employed by municipal police and fire departments. The objective of protecting the health and safety of all within a given municipality would appear to have been the paramount consideration within legislative cognizance. Although now assailable, we may speculate that a presumption and inference were then made which placed in question the capacity of amputees to perform the rigorous duties such personnel may at any moment be called upon to execute. And perhaps the General Assembly deliberately chose to draw such an ineligible class so as to prevent the determination of individual ability on a case-by-case basis for the sake of administrative economy and efficiency. Whatever the underlying policy motivation, the statute as it is presently worded does not permit distinctions to be made. Neither does it act as a total and unqualified bar to employment as a provision is made which exempts clerical and radio dispatch work.

However, the legislature has repeatedly enacted and revised statutes relating to the employment eligibility of physically disabled persons since 1967. And since that time a new State constitution has provided such persons with a powerful franchise, one which is the basis of our present decision. For it is the express policy of this State that eligibility for employment be based upon individual capacity. To that end it has elected to prohibit distinctions in hiring handicapped individuals which are not related to the ability of a particular applicant to satisfactorily perform particular work.

■■ In discerning constitutional will and legislative intent, courts are guided by the same general principles of construction. (See *Wolfson v. Avery* (1955), 6 Ill. 2d 78, 94, 126 N.E.2d 701.) Where the objective has been to determine the meaning and intent of a constitutional provision, courts have long consulted the record of constitutional debate in order to give effect to the policy involved. (See *People ex rel. Keenan v. McGuane* (1958), 13 Ill. 2d 520, 527, 532, 150 N.E.2d 168, *cert. denied* (1958), 358 U.S. 828, 3 L. Ed. 2d 67, 79 S. Ct. 46.) Article I, section 19 was proposed and adopted at the 1970 Constitutional Convention. At the time of its

ratification no other State constitution contained a similarly explicit and specific expression of policy. (Ill. Ann. Stat., Ill. Const. 1970, art. I, par. 19, Constitutional Commentary, at page 675 (Smith-Hurd 1971).) In our view, article I, section 19 is facially unambiguous in its application to the instant case. The extensive constitutional debate concerning this section reveals that language which would have permitted the General Assembly to later establish reasonable exemptions from the broad ban against discriminatory practices was proposed and reproposed without success. The delegates chose to adopt the existing unalloyed statement. 5 Record of Proceedings, Sixth Illinois Constitutional Convention 3678-79, 3684, 3686, 3687.

Even before the adoption of this constitutional provision, the General Assembly enacted legislation which arguably contradicts the statute here under attack. In 1969, under section 5 of "The White Cane Law" (Pub. Act 76-663, eff. August 6, 1969), it gave expression to the following policy:

"§5. It is the policy of this State that the blind, the visually handicapped *and the otherwise physically disabled* shall be employed in the State Service, the service of the political subdivisions of the State, in the public schools and in all other employment supported in whole or in part by public funds on the same terms and conditions as the able-bodied, unless it is shown that the particular disability prevents the performance of the work involved." (Emphasis added.) Ill. Rev. Stat. 1979, ch. 23, par. 3365.

In 1971 the legislature passed the Equal Opportunities for the Handicapped Act (Ill. Rev. Stat. 1971, ch. 38, pars. 65—21 to 65—31.) It was thus unlawful to so discriminate. (Ill. Rev. Stat. 1971, ch. 38, par. 65—23.) West Frankfort was included among employers bound by the statute. (Ill. Rev. Stat. 1971, ch. 38, par. 65—22.) That legislation, in effect at the time of the discrimination now complained of, has been replaced by the current "Illinois Human Rights Act" (Pub. Act 81-1216, §1—101 *et seq.*), which became fully effective on July 1, 1980. (Pub. Act 891-1216, §11—101; see R. Davis and P. Murphey, *The Illinois Human Rights Act: Revision of Illinois Law Concerning Discrimination in Employment*, 69 Ill. B.J. 218, 218 n.1 (1980).) Its declared policy is, *inter alia,* to secure freedom from discrimination based upon physical handicap in connection with employment (Ill. Rev. Stat., 1979 Supp., ch. 68, par. 1—102(A)) and it expressly serves to implement the guarantees established by §19 of article I of the 1970 Constitution (Ill. Rev. Stat., 1979 Supp., ch. 68, pars. 1—102(C).) Again, the present facts fall within its purview. See, *e.g.*, Ill. Rev. Stat., 1979 Supp., ch. 68, pars. 2—102(A), 2—101(B)(1)(c), 1—103(I)(1). ■■ Read together, all of these standards logically exclude distinctions which are not based upon particularized performance-related incapacities. Therefore, in its current formulation, the portion of section 10—2.1—6

which bars applicants who have suffered the amputation of a limb for all purposes other than essentially clerical duties is in letter and spirit contradictory to article I, section 19 of the 1970 Constitution as well as to the pertinent legislation which has subsequently been enacted. We do not believe it is susceptible to any construction under which it could be harmonized with article I, section 19. The constitution is supreme, and acts contrary to its provisions are unconstitutional and void. (*Board of Trustees v. Webb* (1974), 24 Ill. App. 3d 183, 185, 321 N.E.2d 127.) We hold that, as it applies to applicants seeking employment as regular duty firemen in Illinois municipalities, the present unqualified bar against amputees is unconstitutional under article I, section 19 of the Illinois Constitution of 1970. Because of our decision we find no need to rule upon appellant's contentions stemming from other provisions of the Illinois Constitution.

▰ We next turn to Melvin's claim for damages based upon Illinois law. Count II of the complaint seeks declaratory relief and requests wages and benefits to which he would otherwise have been entitled. We hold that the availability of compensatory damages is governed by the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1979, ch. 85, par. 1—101 *et seq.*). The present suit is based on discretionary acts by employees of the City of West Frankfort. The officials responsible are held harmless under the facts by section 2—201, which governs the acts or omissions of public employees engaged in the exercise of discretion, even where it is subsequently determined that that discretion has been abused. (*Melbourne Corp. v. City of Chicago* (1979), 76 Ill. App. 3d 595, 604-05, 394 N.E.2d 1291.) Section 2—202 protects governmental employees when enforcing any law (except in the case of wilful and wanton negligence, not here involved). Section 2—203 applies with even more precision. According to its terms a public official, who acts in good faith, under the apparent authority of an enactment which proves to be unconstitutional, will not be adjudged liable for resulting injuries in any degree greater than if the enactment had proven to be constitutional.[1]

In his argument against applying the strictures of the Local Governmental and Governmental Employees Tort Immunity Act to the present case, appellant distinguishes the parties defendant, stressing that it is only the city as a corporate body which is being sued; that its employees are only joined as necessary parties. Section 2—109 stipulates that West Frankfort is entitled to a co-extensive immunity. Suit against the city alone is of no moment if the provisions of the Act otherwise properly apply. (*Melbourne Corp. v. City of Chicago* (1979), 76 Ill. App. 3d 595, 604;

---

[1] Nor would liability exist here despite the Act, under a common law theory arising out of a Federal "constitutional tort." (*Melbourne Corp. v. City of Chicago* (1979), 76 Ill. App. 3d 595, 602-03.)

*Thiele v. Kennedy* (1974), 18 Ill. App. 3d 465, 467, 309 N.E.2d 394.) All of these sections of the statute apply in the present case where city officials, as part of the performance of their duties under section 10—2.1—6 of the Illinois Municipal Code (Ill. Rev. Stat. 1977, ch. 24, par. 10—2.1—6), acted in apparent good faith in reliance on the validity of a statutory provision which until today no court has found invalid. *Melbourne Corp. v. City of Chicago* (1979), 76 Ill. App. 3d 595, 605-06; see *Reich v. Board of Fire & Police Commissioners* (1973), 13 Ill. App. 3d 1031, 1035, 301 N.E.2d 501.

Appellant argues that his claim for damages is based upon the theory of contract (relying upon section 2—101(a) of the Local Governmental and Governmental Employees Tort Immunity Act), rather than tortious injury. This is unpersuasive. It is theorized that article I, section 19 creates a contractual right in the complainant's behalf which in effect raises a promise that the State will secure the privileges created therein. But, the character of the pleadings plainly advances State and Federal constitutional *duties* which West Frankfort is alleged to have wrongfully failed to observe, proximately resulting in injury in the form of denied wages. As appellee suggests, this follows the traditional model of a tort claim. (See generally, Restatement (Second) of Torts §4 (1965).) We think it would be a fanciful elaboration and extension of the law to find mutual promises existing between these parties. Twisting the relationship of the litigants into a contractual one would contradict the spirit of the Local Governmental and Governmental Employees Tort Immunity Act as well, for the sole purpose of avoiding the statutory bar intended by the legislature. To the contrary, adequate relief is available here through other means.

The case of *People v. Meyerowitz* (1975), 61 Ill. 2d 200, 335 N.E.2d 1, is cited as an instance where the Local Governmental and Governmental Employees Tort Immunity Act was held inapplicable. It is inferred that the characterization of the legal claim therein is analogous to the present case. We disagree. *Meyerowitz* is distinguishable factually and conceptually. Fines were collected from Meyerowitz and other petitioners pursuant to convictions for illegal possession of marijuana. The convictions were subsequently stricken as a result of the retroactive application of a decision that the statute (Ill. Rev. Stat. 1969, ch. 38, par. 22—40) under which conviction had been obtained was unconstitutional. Meyerowitz sought the return of the fine which he had paid. Mr. Justice Goldenhersh ruled that the payment was a condition of probation, and that all of the petitioners were entitled to refunds. In so doing, he characterized their claim as resembling an action for money had and received (*Meyerowitz*, 61 Ill. 2d 200, 212); the resemblance to quasi-contract placed such fines beyond the pale of the Local Governmental and Governmental Employees Tort Immunity Act. The basis in equity of such a characterization is not present in the case before us. No money, fine, or tax has been paid

over to the State here. (See *Board of Highway Commissioners v. City of Bloomington* (1911), 253 Ill. 164, 174, 97 N.E. 280.) It is appellee's allegedly tortious refusal to contract which is the theory of this claim, not a motion in criminal court to vacate a conviction and sentence.

■■ Finally it is contended that article I, section 12 of the 1970 Illinois Constitution, stating that "every person shall find a certain remedy in the laws for all injuries and wrongs * * *," is an independent basis for allowing damages. However, the court has previously held that the Local Governmental and Governmental Employees Tort Immunity Act is unaffected by article I, section 12. (*Adams v. City of Peoria* (1979), 77 Ill. App. 3d 683, 687, 396 N.E.2d 572.) Neither does the instant provision prescribe a monetary remedy alone, as is apparent on its face.

■■ Plaintiff has also presented extensive argument challenging the Federal constitutional validity of the provisions of section 10—2.1—6, which we have today ruled invalid under the laws of Illinois. We will not determine these questions because of the rule that a reviewing court will not consider or resolve issues unnecessary to the disposition of the particular cause at bar. (*Spunar v. Clark Oil & Refining Corp.* (1977), 53 Ill. App. 3d 477, 480, 368 N.E.2d 990.) Additionally, it would be improper for us to rule upon constitutional issues needlessly *Haughton v. Haughton* (1979), 76 Ill. 2d 439, 448, 394 N.E.2d 385, *cert. denied* (1980), 444 U.S. 1102, 62 L. Ed. 2d 789, 100 S. Ct. 1069; see *Ashwander v. Tennessee Valley Authority* (1936), 297 U.S. 288, 347, 80 L. Ed. 688, 56 S. Ct. 466 (Brandeis, J., concurring).

■■ Allied with Melvin's Federal constitutional argument is the request within his brief that we grant leave to amend the pleadings so that he may prosecute a claim pursuant to the Federal Civil Rights Act of 1871 (now 42 U.S.C. §1983).[2] Leave to amend is hereby denied. It is a long-standing general rule that an issue not presented to or considered by the trial court may not be raised for the first time on appeal and that points argued on review must be commensurate with the issues presented below. (*Kravis v. Smith Marine, Inc.* (1975), 60 Ill. 2d 141, 147, 324 N.E.2d 417.) This precept is necessary both to prevent prejudice to the opposing party and to preserve the efficacy of our system of appellate jurisdiction. (*In re Estate of Leichtenberg* (1956), 7 Ill. 2d 545, 548-49, 131 N.E.2d 483.) Indeed, once judgment is entered in the circuit court, there is no *right* to

---

[2] Title 42 U.S.C. §1983, which provides a civil action for the deprivation of rights, states that:

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in action at law, suit in equity, or other proper proceedings for redress."

amend the complaint for purposes other than to conform pleadings to proof. (*First National Bank v. City of Aurora* (1978), 71 Ill. 2d 1, 8, 373 N.E.2d 1326; see Ill. Rev. Stat. 1979, ch. 110, pars. 46(1), 46(3), 46.1.) By virtue of Supreme Court Rule 366(a)(1) (Ill. Rev. Stat. 1979, ch. 110A, par. 366(a)(1)) we have the discretionary authority to "* * * exercise all or any of the powers of amendment of the trial court;" upon just terms. A procedure for amendment of the pleadings and process by reviewing courts is provided to litigants within Supreme Court Rule 362 (Ill. Rev. Stat. 1979, ch. 110A, par. 362). Section 362(a) requires that any party seeking amendment on appeal shall present a written application, supported by affidavit, to that end. (*Pettit v. Pettit* (1978), 60 Ill. App. 3d 375, 380, 376 N.E.2d 782.) Appellant has not taken the opportunity to make such an application and offers no explanation for not doing so. We decline to exercise our discretion to allow the amendment. The complainant here urges an entirely new Federal statutory cause of action which he disclaimed seeking in argument before the trial court. Count II of plaintiff's complaint, based upon the fourteenth amendment, makes no request for damages growing out of the alleged Federal constitutional violation. Therefore, his argument in brief is the first effort to raise such a claim for relief. The values inherent in a fair, orderly, effective and expeditious system of appeals are important to protect when considered in light of all of the circumstances of this case. For the same reasons we choose not to exercise our discretion in accordance with Supreme Court Rule 362(f), first cited in appellant's reply brief. See *In re Estate of Leichtenberg* (1956), 7 Ill. 2d 545, 548-49.

For all the foregoing reasons the decision of the trial court is reversed and the cause is remanded to the circuit court of Franklin County for further proceedings consistent with this opinion.

Reversed and remanded.

KASSERMAN, P. J., and KARNS, J., concur.