THE BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS, Plaintiff-Appellant, v. THE HUMAN RIGHTS COMMISSION *et al.*, Defendants-Appellees.

Fourth District   No. 4—85—0021

Opinion filed October 22, 1985.

Michael A. Warner and Valerie J. Hoffman, both of Seyfarth, Shaw, Fairweather & Geraldson, of Chicago, and Donald A. Henss, of the University of Illinois, of Urbana, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Jill Wine-Banks, Solicitor General, and Edward M. Kay, Assistant Attorney General, both of Chicago, of counsel), for appellees Human Rights Commission and Department of Human Rights.

Susan Margaret Vance, Henry C. Krasnow, and Frona C. Daskal, all of Mandel, Lipton & Stevenson, Ltd., of Chicago, for appellee Howard Laws.

PRESIDING JUSTICE GREEN delivered the opinion of the court:

The Illinois Human Rights Act (Ill. Rev. Stat., 1980 Supp., ch. 68, par. 1—101 et· seq.) became effective July 1, 1980, superseding the Fair Employment Practices Act (Ill. Rev. Stat. 1977, ch. 48, pars. 851 through 867). Section 3(a) of the latter Act (Ill. Rev. Stat. 1977, ch. 48, par. 853(a)) provided that an employer committed an unfair employment practice if the employer refused to hire an individual because of a "physical or mental handicap unrelated to" the ability of the individual to perform the work involved. We are concerned here with the refusal of plaintiff, the Board of Trustees of the University of Illinois (University) to hire defendant, Howard Laws, as a sheet metal worker because one of his legs had been amputated above the knee, requiring him to use a prosthesis. Sheet metal workers employed by the University were required, on occasion, to climb ladders and work on scaffoldings.

On August 28, 1978, Laws filed a complaint against the University with the Fair Employment Practices Commission charging it with a discriminatory act. Upon the effective date of the Illinois Human Rights Act, the Commission assumed jurisdiction of the case (Ill. Rev. Stat., 1980 Supp., ch. 68, par. 9—102(A)). After various proceedings, including hearings before an administrative law judge, the Commission entered an order on February 2, 1982, finding that the University had discriminated against Laws and ordering that (1) Laws be hired, (2) lost earnings to the date of his hiring be awarded him, and (3) he be given participation in the State Universities Retirement System retroactive to the date he should have been hired. After various further proceedings, the Commission awarded Laws attorney fees in the sum of $35,484 on June 29, 1984.

On March 16, 1982, plaintiff filed a complaint for administrative review (Ill. Rev. Stat. 1981, ch. 110, par. 3—103) in the circuit court of Champaign County. That court entered a judgment on December 12, 1984, affirming the judgment of the Commission. The plaintiff has appealed, contending (1) the circuit court applied the wrong legal standards, (2) a Commission determination that the University did not articulate a legitimate reason for rejecting Laws is contrary to the manifest weight of the evidence, and (3) the award of attorney fees was erroneous.

The underlying facts as presented to the administrative law judge are not in substantial dispute. On November 16, 1977, Laws applied for a position as a sheet metal worker with the University. He passed a written examination and was personally interviewed in April of 1978 by Don Martin and Joe Peters, sheet metal foreman and supervisor of building craftsmen for the University, respectively. They recommended Laws for employment, and the University subsequently selected him for employment in June 1978 subject to his passing a physical examination. That examination was conducted by a nurse at a health center operated by the University.

The examination by the nurse included an examination of his leg and stump. She did not require him to do any climbing or perform any other agility exercise. The record indicates that Laws told her that he preferred ground work but could do climbing and work on scaffolds. The nurse completed a written medical history and report and sent the same to Dr. L. M. Hursh and Dr. Marion Kinzie, respective, director and associate director of the University's health service. Among the responsibilities of those two physicians was that of passing upon the physical condition of applicants for nonacademic positions with the University. Based upon the report and history transmit-

ted by the nurse and without examining or interviewing Laws, they concluded that his amputation rendered him incapable of performing the tasks of a sheet metal worker with the required degree of safety. The University then rejected Laws for consideration and hired another applicant.

Laws' leg was amputated above the knee in 1958 after he had been injured while riding on a motorcycle. For five years prior to that he had been a roofer. In 1960 he began working in the sheet metal trade and had continued in that trade to the time of the hearing. Various witnesses testified to the manner in which Laws had performed as a sheet metal worker. They indicated that on many occasions he had climbed ladders and worked on scaffolds and roofs without any noticeable difficulty.

The Commission found that no evidence was presented "in support of [the University's] position that" Laws was unable to perform the work of a sheet metal worker. The administrative law judge had refused to permit the University to allow Dr. Kinzie to give an expert opinion as to whether one having Laws' physical impairment could safely perform the functions of the job which he sought. We do not agree with the full force of this finding. The impairment to his leg was some relevant evidence of his possible inability to perform the work. However, it was not, of itself, sufficient to require the Commission to find in favor of the University.

The decision of the appellate court of this State for the Fifth District in *Melvin v. City of West Frankfort* (1981), 93 Ill. App. 3d 425, 417 N.E.2d 260, is of significance here. That court held section 10—2.1—6 of the Illinois Municipal Code (Ill. Rev. Stat. 1977, ch. 24, par. 10—2.1—6) to violate the Bill of Rights provision of our State constitution, which provides:

> "All persons with a physical or mental handicap shall be free from discrimination in the sale or rental of property and shall be *free from discrimination unrelated to ability in the hiring* and promotion practices of any employer." (Emphasis added.) (Ill. Const. 1970, art. I, sec. 19.)

Section 10—2.1—6 purported to forbid various municipalities from hiring firemen or policemen, except for clerical work or operation of a radio, if the applicant had suffered the amputation of a limb.

The *Melvin* court recognized that by the standards of 1967, when section 10—2.1—6 was enacted, it would have appeared to have been reasonable legislation promoting the public safety by imposing high standards of fitness for those performing the hazardous tasks involved. The court also noted that the blanket provision in regard to

amputees served to eliminate disputes concerning which of persons whose fitness might be subject to question would be found able to perform the work in question and which were to be rejected. Nevertheless, the court determined that a new public policy had been pronounced by article I, section 19, of the Illinois Constitution of 1970 and legislation in support thereof and concluded that blanket provisions eliminating amputees were no longer permissible.

■ The evidence here indicates that Laws was likewise eliminated by a determination that an amputee with his impairment could not safely do the work required. As we have indicated, he was given no test concerning his ability to climb or his agility or balance. There was no indication that those making the determination to reject him were privy to information concerning how Laws had performed climbing ladders and working on scaffoldings in the 17 years in which he had worked despite his impairment. Notably, neither the sheet metal foreman nor the supervisor of building crafts indicated any concern about Laws' ability to perform his work safely. Just as section 10—2.1—6 of the Municipal Code appeared fair and made sense at the time of its enactment, the decision to summarily reject Laws as a person presenting a greater risk than a person with two good legs would have been quite appropriate a few years ago. Today, public policy requires, in fairness to the handicapped, that a more individualized consideration be given to one in Laws' position.

■ Inherently, the standard described in *Melvin* and applied here, requiring that an employer make an individualized determination of the ability of a handicapped person to perform the work sought before rejecting that person, places a substantial burden upon the employer. We are concerned with that burden. Laws and the Commission seem to have contended that the University should have had Laws examined by a person expert in the field of working with or treating amputees. We reject that argument as placing too great a burden on employers. Rather, the thrust of our holding here is that the focus of the employer's inquiry should be as to whether the *particular handicapped person* applying for work could perform the *particular work* involved.

Plaintiff's contention that the circuit court applied improper legal standards in reaching its decision to affirm does not create an issue which would cause us to reverse even if the contention was correct. The circuit court sat in review of the Commission's decision. It made no factual determination. If it reached the correct results we can affirm even if its decision was for a wrong legal reason. (*Material Service Corp. v. Department of Revenue* (1983), 98 Ill. 2d 382, 457

N.E.2d 9.) We choose not to further lengthen this opinion by considering this contention in detail.

The Commission's determination that the University did not articulate a legitimate reason for rejecting Laws does give us concern. This determination was apparently made by the Commission because it was applying the disparate treatment theory of proving discrimination first enunciated in *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817. Under that theory, a member of a protected group must first show that he was qualified for a job, applied and was rejected, after which the employer sought to hire others. This showing then shifts the burden to the employer to give a nondiscriminatory reason for the rejection. If such a reason is established, the burden shifts back to the applicant to establish that the articulated reason was pretext. Slight modification has been made in the procedure by the decision in *Texas Department of Community Affairs v. Burdine* (1981), 450 U.S. 248, 67 L. Ed. 2d 207, 101 S. Ct. 1089. See also *Burnham City Hospital v. Human Rights Com.* (1984), 126 Ill. App. 3d 999, 467 N.E.2d 635.

■■ ■ The Commission not only found that plaintiff did not articulate a legitimate reason for not hiring Laws, it also found that the stated reason that the University *did not deem him to be a safe employee was pretext*. The latter finding makes no sense. No inference of pretext can logically arise from this record. The evidence gives absolutely no indication that the reason for rejecting Laws was anything worse than a good faith but overly cautious decision after an insufficiently thorough investigation which resulted in unfair treatment for Laws. The disparate impact method is very appropriate for dealing with employment discrimination based upon race, religion, and gender, but it is not a useful tool in cases of this nature. Mechanical application of the method, which the Commission apparently felt bound by precedent to use, gave rise to a ridiculous finding. However, the inappropriateness of the method used does not negate the impropriety in denying Laws employment merely because of his amputation without a more through inquiry as to his individual ability to overcome his handicap.

■■ The question of the attorney fees which were awarded Laws was largely one of fact. Although Laws' counsel was less experienced than local attorneys shown to have charged at the same rate she charged for court and office work, this testimony did give support to the award. There was sufficient evidence that the attorney devoted the hours charged. Plaintiff contends that the fees were disproportionate to the monetary award but that award was only a relatively

small part of the victory won by Laws. Obtaining the job was a more significant gain for him. While the fee was high, we cannot determine that it was excessive as a matter of law.

For the foregoing reasons, we affirm.

Affirmed.

WEBBER and McCULLOUGH, JJ., concur.