THE CITY OF BELLEVILLE, Board of Police and Fire Commissioners, Petitioner-Appellant and Cross-Appellee, v. THE HUMAN RIGHTS COMMISSION *et al.*, Respondents-Appellees and Cross-Appellants.

Fifth District    No. 5—86—0804

Opinion filed April 6, 1988.

Robert J. Sprague, of Sprague, Sprague & Ysursa, of Belleville, for appellant City of Belleville Board of Police and Fire Commissioners.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, and Bret A. Rappaport, Assistant Attorney General, both of Chicago, of counsel), for appellee Human Rights Commission.

Kevin C. Kaufhold, of Kassly, Bone, Becker, Dix, Tillery & Reagan, P.C., of Belleville, for appellee Craig Stafford.

JUSTICE KARNS delivered the opinion of the court:

Craig Stafford filed a complaint with the Illinois Human Rights Commission (HRC) against the Board of Fire and Police Commissioners of Belleville (the Board). The complaint alleged handicap discrimination in violation of the Illinois Human Rights Act (Ill. Rev. Stat. 1985, ch. 68, par. 1—101 et seq.) (hereinafter HRA or Act). The record indicates that the Board refused to appoint Stafford to the position of probationary patrol officer because he failed to meet the minimum vision standard required for appointment. Stafford maintained in his complaint that the particular vision standard relied on by the Board constituted unlawful discrimination within the meaning of the HRA. After a hearing, the Administrative Law Judge (ALJ) found that the Board had unlawfully discriminated against Stafford on the basis of a physical handicap and recommended that, in addition to back pay and attorney fees, he be awarded the position of patrol officer without having to serve the usual probationary period. The HRC adopted the ALJ's finding and recommendations, but awarded Stafford the position of probationary patrol officer, holding that this was the position denied Stafford and such relief would place him in the position he would have been in absent the Board's discriminatory conduct. The Board appeals that part of the decision finding that it unlawfully discriminated against Stafford, and Stafford appeals that part of the decision awarding him only probationary patrol officer status.

In 1982, Craig Stafford applied for the position of probationary patrol officer for the City of Belleville. At the time Stafford was already employed by Belleville as an auxiliary police officer. Appointments of probationary patrol officers were made by the board of fire and police commissioners. As part of the application process, the Board requested that Stafford take an examination for the position. Based on his score of 77.97%, Stafford's name was placed on the eligibility list in the number one position.

The Board made Stafford's appointment conditional on his passing a physical examination, including a vision test. The ophthalmologist Stafford was referred to reported to the Belleville police pension board that Stafford had uncorrected vision of 20/100- in his right eye, 20/100- in his left eye and 20/80 in both eyes when tested together. He also reported that with corrective lenses, Stafford had 20/20 vision in each eye separately and in both eyes together.

At the time of Stafford's application, the Board maintained a min-

imum vision requirement for probationary police officers of 20/30 uncorrected. The record indicates that this requirement did not apply to officers already on the force and that there were some officers who did not meet this standard. As Stafford failed to meet the required standard, he was denied the position of probationary patrol officer and terminated from his position as an auxiliary officer.

Initially, we must address the issue of the HRC's jurisdiction, which the Board raised for the first time in its reply brief. The Board maintains that by virtue of section 3—148 of the Illinois Pension Code (Ill. Rev. Stat. 1985, ch. 108½, par. 3—148), the HRC is without jurisdiction to hear Stafford's complaint. Section 3—148 provides that "[t]he provisions of the Administrative Review Law *** shall apply to and govern all proceedings for the judicial review of final administrative decisions of the retirement board." (Ill. Rev. Stat. 1985, ch. 108½, par. 3—148.) The Board cites *Board of Trustees of the Police Pension Fund v. Human Rights Comm'n* (1986), 141 Ill. App. 3d 447, 490 N.E.2d 232, to support its position. In *Urbana*, an applicant for the position of policeman applied to participate in the city's police pension fund. The board of trustees of the fund denied the application. Instead of appealing the denial through administrative channels, the applicant filed a charge of discrimination with the Department of Human Rights. The board sought a circuit court order prohibiting the HRC from proceeding on the complaint. The trial court declined to issue an order of prohibition, but this court reversed, holding that the Illinois Pension Code gave the board exclusive authority over issues of eligibility to participate in the police pension fund and implicitly gave the pension fund board exclusive authority over certain civil rights violations. In reaching its conclusion, the *Urbana* court relied on the long-standing rule that where expressly adopted, the Administrative Review Law is the exclusive method of review of the decision of an administrative agency. (*Mason v. Board of Trustees of Southern Illinois University* (1984), 125 Ill. App. 3d 614, 617, 466 N.E.2d 365, 367-68.) Our recent decision in *City of Benton Police Department v. Human Rights Comm'n* (1987), 160 Ill. App. 3d 55, 513 N.E.2d 29, followed *Urbana*.

■ This argument was raised for the first time in the Board's reply brief. Illinois Supreme Court Rule 341(e)(7) requires that all arguments must be raised in the opening brief and any points not raised are waived and shall not be raised in the reply brief. (107 Ill. 2d R. 341(e)(7).) Although the Board contends that this is a question of subject matter jurisdiction, which can be raised at any time, the decision in *Urbana* makes clear that this is not a question of subject matter

jurisdiction. The HRC has subject matter jurisdiction over alleged civil rights violations. The appropriate inquiry is whether the Commission has legitimate authority to proceed on the complaint. (*Urbana*, 141 Ill. App. 3d at 451-52, 490 N.E.2d at 234.) As this is not a question of subject matter jurisdiction, it cannot be raised for the first time in the Board's reply brief.

Even if this argument had been properly raised by the Board, it would not prevail. The statute relied upon by the Board and the cases cited in support of its position are not authority supporting the Board's argument. The decision not to hire Stafford was made by the Board of Fire and Police Commissioners, whose actions are controlled by the Illinois Municipal Code (Ill. Rev. Stat. 1985, ch. 24, par. 10—2.1—1 *et seq.*). This does not involve the Illinois Pension Code (Ill. Rev. Stat. 1985, ch. 108½, par. 3—101 *et seq.*) and section 3—148 of the Pension Code does not apply.

█ A charge of discrimination under the Illinois Human Rights Act utilizes the same analytical framework adopted by the Supreme Court in *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817, and later refined in *Texas Department of Community Affairs v. Burdine* (1981), 450 U.S. 248, 67 L. Ed. 2d 207, 101 S. Ct. 1089. *Board of Education of Waterloo Community Unit School District No. 5 v. Human Rights Comm'n* (1985), 135 Ill. App. 3d 206, 481 N.E.2d 994.

Under the *Burdine* analysis, the complainant has the initial burden of exhibiting a *prima facie* case of discrimination. If the plaintiff is successful, the burden then shifts to the employer to articulate a legitimate nondiscriminatory reason for its employment decision. Should the employer carry this burden, the complainant must then show by a preponderance of the evidence that the reasons offered by the employer were not its true reasons and were only a pretext for discrimination. *Board of Education*, 135 Ill. App. 3d at 209, 481 N.E.2d at 996.

█ To establish a *prima facie* case of discrimination, the complainant must show that: (1) the complainant is handicapped within the definition of the Act; (2) the complainant is qualified and the handicap is unrelated to the individual's ability to do the required work; and (3) the adverse job action was taken because of the handicap. (*Caterpillar, Inc. v. Human Rights Comm'n* (1987), 154 Ill. App. 3d 424, 506 N.E.2d 1029.) The issue of whether Stafford is handicapped within the meaning of the Act was not raised, and the Board specifically states that Stafford was denied employment because of vision. Therefore, the only element of the *prima facie* case which is at

issue is whether Stafford is qualified and whether his handicap is related to his ability to do the work. As this is a question of fact, we will not disturb the HRC's finding unless it is clearly against the manifest weight of the evidence. *Board of Directors, Green Hills Country Club v. Human Rights Comm'n* (1987), 162 Ill. App. 3d 216, 221, 514 N.E.2d 1227, 1231.

■ The HRC found that Stafford was capable of performing as a police officer notwithstanding his visual impairment. We believe the record clearly supports this conclusion. At the time of the hearing Stafford was serving as a police officer for several local communities and as a correctional officer for St. Clair County. He served three years in the Marine Corps during which time he was assigned to guard detail at several United States embassies. After being honorably discharged, Stafford was sponsored by the Belleville Auxiliary Police Department and successfully completed a police academy course in basic law enforcement. He is a qualified sharpshooter with a .38 and a .45 caliber pistol as well as the M16 rifle. Stafford introduced into evidence two firing range targets, one of which he fired at with his glasses on and one of which he fired at with his glasses off. He qualified both times. In a handicap discrimination case, the complainant fails to establish his *prima facie* case only if he cannot do the job. Stafford is not only able to do the job, but is highly qualified. Stafford clearly met his burden of establishing a *prima facie* case of discrimination.

The next step of the *McDonnell Douglas/Burdine* paradigm, should the complainant establish his *prima facie* case, is for the employer to articulate a legitimate nondiscriminatory reason for its employment decision.

■ The Board offers as its reason the existence of its vision requirement of 20/30 uncorrected for new police officers. The HRC contends that this is a blanket prohibition against hiring handicapped persons and is, therefore, prohibited by article I, section 19, of the Illinois Constitution, which provides:

"All persons with a physical or mental handicap shall be free from discrimination in the sale or rental of property and shall be free from discrimination unrelated to ability in the hiring and promotion practices of any employer." Ill. Const. 1970, art. I, §19.

In *Melvin v. City of West Frankfort* (1981), 93 Ill. App. 3d 425, 417 N.E.2d 260, the court held unconstitutional a provision of the Illinois Municipal Code of 1961 which prohibited the appointment to the fire or police department of a municipality any person who had suf-

fered the amputation of a limb. (*Melvin*, 93 Ill. App. 3d at 428, 417 N.E.2d at 261.) In reaching that conclusion, we reiterated the express policy of this State that eligibility for employment be based on individual capacity and that blanket restrictions in hiring handicapped individuals which are not related to the ability of the particular applicant to perform the particular work are prohibited. Relying on *Melvin*, this court held in *Board of Trustees of University of Illinois v. Human Rights Comm'n* (1985), 138 Ill. App. 3d 71, 485 N.E.2d 33, that refusing to hire an amputee applicant without first testing his ability to perform the required work or without evidence that his handicap impaired his past performance was tantamount to a blanket rejection of handicapped persons and against public policy. (*Board of Trustees*, 138 Ill. App. 3d at 75, 485 N.E.2d at 36.) In reaching its conclusion the court held that "the focus of the employer's inquiry should be as to whether the *particular handicapped person* applying for work could perform the *particular work* involved." (Emphasis in original.) *Board of Trustees*, 138 Ill. App. 3d at 75, 485 N.E.2d at 36.

While the present case is very similar to *Melvin* and *Board of Trustees*, they are not entirely analogous. Both cases involved blanket prohibitions against the hiring of amputees without providing a testing procedure to determine each individual applicant's ability to perform the particular work in question. In this case, however, each new applicant was given a vision test to determine if he met the requisite standard predetermined by the Board to be necessary to perform the work. Unlike the situation involving amputee applicants, where each individual's particular handicap results in differing degrees of ability, which necessarily would require individualized testing to determine whether the particular applicant can perform the work, all applicants with 20/30 vision see, by definition, with the same degree of visual acuity.[1] The application of a vision standard does not constitute a *per se* blanket prohibition violative of public policy, provided the standard used is justifiable. In this case there is no empirical evidence to indicate that 20/30 uncorrected vision is the minimum degree of visual acuity necessary to perform the job; it is simply an arbitrary assumption by the Board. For this reason, we find the application of the 20/30 uncorrected vision standard violates public policy as expressed in the Illinois Constitution.

■ The HRC further argues that the 20/30 uncorrected vision

---

[1]The number used to measure an individual's visual acuity is called the Snellen Standard. Under this standard a person with 20/30 vision can see at 20 feet what a person with 20/20 vision can see at 30 feet.

standard is unreasonable by its own terms. This is a question of fact and the record provides ample support for the HRC's conclusion. Evidence was submitted indicating that less than 4% of police departments have a standard more restrictive than 20/40 and approximately 50% have a standard requiring only 20/100 vision. Stafford would meet the vision requirement for both the Illinois State Police and the Federal Bureau of Investigation. We also note that this standard was adopted in 1959. Given the substantial advances in the fields of ophthalmology and optometry since that time, we believe the imposition of an uncorrected vision standard as restrictive as this one is archaic. We conclude that the HRC's determination that the Board failed to articulate a legitimate nondiscriminatory reason for its decision was not against the manifest weight of the evidence and is well supported by the record.

The final step of the *McDonnell Douglas/Burdine* analysis provides that should the employer articulate a legitimate nondiscriminatory reason for its action, the complainant has the opportunity to prove by a preponderance of the evidence that the proffered legitimate reason is merely a pretext for discrimination and is unworthy of credence. As the Board failed to articulate a legitimate nondiscriminatory reason, we need not reach that stage of the analysis.

The Board also appeals the ALJ's ruling that the evidence introduced by the Board to justify its vision requirement was an affirmative defense which the Board waived by failing to plead it. In his interim recommended order and decision, the ALJ held that the evidence offered by the Board to support its vision standard was in the nature of a *"Bona Fide* Occupational Qualification" (BFOQ) defense. Because it was not pleaded as an affirmative defense, the ALJ ruled the evidence should not be considered.

■ The BFOQ defense is a statutorily created exemption from liability for certain types of discrimination. (Ill. Rev. Stat. 1985, ch. 68, par. 2—104(A).) Under traditional analysis the BFOQ defense is available only when the employer can show that no one in the excluded class is capable of performing the duties essential to the job. (See *Hayes v. Shelby Memorial Hospital* (11th Cir. 1984), 726 F. 2d 1543, 1549.) Under the *McDonnell Douglas/Burdine* analysis, however, an employer will escape liability for handicap discrimination by showing that the complainant cannot perform the job. The employer need not show that no one in the class can do the job. If the employer cannot show the complainant to be unable to perform, then he cannot show the entire class incapable. The analytical process of the *McDonnell Douglas/Burdine* rule necessarily eliminates the BFOQ defense. Fur-

ther, the Board could not argue the BFOQ defense in this case because the vision standard applies only to new officers and not to officers already on the force. Absent universal application, the Board cannot say that this is a *bona fide* occupational qualification.

■■ Finally, Stafford argues on appeal that the HRC should not have required him to serve the probationary period and should have awarded him the position of patrol officer. Stafford maintains that because the Board did not contest the ALJ's recommendation, the HRC is bound to accept it.

The HRC is a creation of statute and has no powers other than those conferred upon it by statute. (*City of Chicago v. Fair Employment Practices Comm'n* (1976), 65 Ill. 2d 108, 357 N.E.2d 1154.) The purpose of the remedial section of the statute is to put the claimant in the position he would have been but for the discrimination. (*Clark v. Human Rights Comm'n* (1986), 141 Ill. App. 3d 178, 490 N.E.2d 29.) Stafford was denied the position of probationary patrol officer. The opportunity he was unlawfully deprived was the opportunity to work his way onto the police force. The relief Stafford sought was greater than the HRC could grant.

The judgment of the Human Rights Commission is affirmed.

Affirmed.

LEWIS and CALVO, JJ., concur.