NOTICE
Decision filed 04/13/20. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2020 IL App (5th) 190026-U

NO. 5-19-0026

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| ROBERT JAKUBOWSKI, | ) | On Petition for Direct |
| | ) | Administrative Review of |
| Petitioner, | ) | an Order of the Illinois |
| | ) | Human Rights Commission. |
| v. | ) | |
| | ) | |
| ILLINOIS HUMAN RIGHTS COMMISSION, | ) | Charge No. 2012SF1530 |
| ILLINOIS DEPARTMENT OF HUMAN | ) | EEOC No. 21BA20441 |
| RIGHTS, and ILLINOIS DEPARTMENT OF | ) | ALS No. 13-0174 |
| CORRECTIONS, | ) | |
| | ) | |
| Respondents. | ) | |

_____

JUSTICE CATES delivered the judgment of the court.
Justices Boie and Wharton concurred in the judgment.

**ORDER**

¶ 1   *Held*: The Illinois Human Rights Commission did not abuse its discretion in sustaining the Illinois Department of Human Rights' dismissal of Robert Jakubowski's charge of discrimination for lack of substantial evidence.

¶ 2   On November 11, 2011, Robert Jakubowski filed a charge of discrimination with the Illinois Department of Human Rights (Department) pursuant to the Illinois Human Rights Act (775 ILCS 5/1-101 *et seq.* (West 2010)). He alleged that his employer, the Illinois Department of Corrections (IDOC), failed to promote him because of his race. On January 23, 2013, the Department dismissed the charge for lack of substantial evidence

1

following its investigation into the matter. On April 26, 2013, Jakubowski sought review with the Illinois Human Rights Commission (Commission) which sustained the Department's dismissal of the charge on December 14, 2018. Jakubowski then petitioned this court for direct administrative review of the Commission's decision pursuant to 775 ILCS 5/8-111(B) (West 2018).

¶ 3    Jakubowski challenges that the Commission abused its discretion in sustaining the dismissal of his charge of discrimination. Jakubowski argues that he submitted a *prima facie* case of employment discrimination for failure to promote, and that IDOC's justification for not promoting Jakubowski was pretextual. Jakubowski asserts that his educational background, compared to the selected candidate's, made him more qualified for IDOC's available position, and that race played a role in the decision to promote the selected candidate. For the following reasons, we affirm the Commission's order dismissing Jakubowski's charge.

¶ 4                                    BACKGROUND

¶ 5    Jakubowski worked as a correctional counselor at Vandalia Correctional Center (Vandalia) from 1991 to 2011. On January 1, 2011, IDOC promoted Jakubowski to a Clinical Services Supervisor (CSS) position at Danville Correctional Center (Danville). On December 28, 2010, IDOC posted a job opening for a CSS position at Vandalia. Under Jakubowski's union contract with IDOC, Jakubowski could not transfer to an open position at another IDOC facility. He was required to apply and interview for open positions.

¶ 6    The Vandalia job posting listed the minimum job requirements for the CSS position as follows:

"Requires education and experience equivalent to a master's degree in the behavioral or social sciences; requires three years of progressively responsible professional experience in corrections, juvenile rehabilitation, behavioral, social sciences or a related field; requires thorough knowledge of the techniques utilized in managing a counseling and guidance program; requires thorough knowledge of factors relating to behavior problems and the methods of treating behavioral problems; requires ability to supervise and coordinate a professional staff of individuals trained in the human services field; requires ability to instruct and train a staff in the proper procedures of implementing an effective reintegration program; requires ability to communicate effectively both orally and in writing; requires ability to establish and maintain satisfactory working relationship with residents, representatives of civic, law enforcement and community agencies, institution staff and subordinate staff."

¶ 7 Two candidates applied and interviewed for the CSS position at Vandalia—Jakubowski and Henry Teverbaugh. Jakubowski is white, and Teverbaugh is black. The interviews were conducted by Gregory Schwartz, a shift supervisor, and Lisa Flowers, a business administrator. Both Schwartz and Flowers are white. During the interviews, Jakubowski and Teverbaugh were asked the same questions and were evaluated in the following categories: knowledge and experience, education and training, leadership, planning, and judgment.

¶ 8 The education and training category required "knowledge, skill, and mental development equivalent to the completion of a master's degree in the behavioral or social

3

sciences." This category was broken down into two parts for the candidates to answer: "[d]escribe your [e]ducational credentials[ ]" and "[d]escribe how the education and training you possess will help you perform the responsibilities of the job." Jakubowski and Teverbaugh explained their educational credentials and were both scored at three out of four points.

¶ 9    Jakubowski stated that he has an undergraduate degree in Administration of Justice and the "equivalent" of two master's degrees in human development counseling and counseling psychology. He also indicated that he had completed the requirements for a doctorate in psychology except for the publication of a dissertation. He added that he had 1800 hours of practicum experience and 2000 hours in an internship.

¶ 10    Teverbaugh reported that he has a bachelor's degree in criminal justice and had been employed by IDOC since 1988. He had been involved in correctional programs for his entire career either as a correctional counselor or correctional casework supervisor. At the time of the interview, Teverbaugh was working to obtain his CADC[1] license. He also indicated that he was a state hostage negotiator and a chairperson on the Adjustment Committee. Teverbaugh added that, as part of his duties, he oversaw day-to-day activities such as "grievances, transfers, substance abuse, [and] good time revocation."

¶ 11    Both Jakubowski and Teverbaugh were scored at two out of four points for describing how their education and training would help them perform the responsibilities

_____

[1]CADC is the acronym for Certified Alcohol and Drug Counselor. Per the IDOC's website, the Addiction Recovery Management Services Unit of IDOC facilitates CADC training. https://www2.illinois.gov/idoc/programs/Pages/AddictionRecoveryServices.aspx. (last visited Apr. 7, 2020).

4

of a CSS. This resulted in a total score of 2.5 points in the education and training category for both Jakubowski and Teverbaugh.

¶ 12    While Jakubowski and Teverbaugh received the same score in education and training, Teverbaugh scored 0.1 points higher in the knowledge and experience category and 0.15 points higher in the leadership category. For the overall interview, Teverbaugh received a total score of 2.917, and Jakubowski received a total score of 2.667. IDOC promoted Teverbaugh and provided justification for its decision on an "Employment Decision Form." The form indicated that IDOC believed Teverbaugh was the most qualified candidate for the CSS position.

¶ 13    Jakubowski subsequently filed a charge of discrimination with the Department alleging that IDOC did not promote him because he is white. Jakubowski contended that he was "well qualified" for the CSS position, and that IDOC promoted Teverbaugh: "a less qualified Black applicant." The Department investigated Jakubowski's charge and interviewed Jakubowski, Schwartz, Flowers, and Leslie McCarty, IDOC's affirmative action officer. The Department also reviewed Jakubowski's charge, IDOC's response to the charge, a list of CSS's in IDOC, Jakubowski and Teverbaugh's interview packets, and provisions of IDOC's interview guidelines and personnel rules.

¶ 14    Jakubowski reported that he believed IDOC picked Teverbaugh because IDOC "seeks to promote minority people, which then knocks out others." Jakubowski felt that he was the most qualified for the job. After reviewing his and Teverbaugh's interview scores, Jakubowski told the Department that IDOC "understated" his education. Jakubowski

5

asserted that he should have received more points than Teverbaugh because Jakubowski has more formal education.

¶ 15    Schwartz and Flowers informed the Department that they were not instructed to pick Teverbaugh for the position. Schwartz and Flowers explained that Jakubowski and Teverbaugh were asked the same questions and scored in the same categories with Teverbaugh outscoring Jakubowski in knowledge and experience and leadership. According to Schwartz, Jakubowski and Teverbaugh received the same score in the education subcategory because "Teverbaugh had over 20 years' experience besides a degree."

¶ 16    The Department concluded that IDOC followed its policy for interviewing candidates for the CSS position. The investigation also revealed that 22 of the 24 CSS positions in IDOC were held by white individuals. The Department noted that there was no evidence of race being mentioned during the interviews or of anyone using "anti-white slurs" against Jakubowski. The Department found that there was a lack of substantial evidence and dismissed Jakubowski's charge of discrimination.

¶ 17    Jakubowski filed a request to review the Department's dismissal of his charge with the Commission. Jakubowski asserted that IDOC "underrepresented" his education and experience and "over emphasized" Teverbaugh's education and training. Jakubowski argued that he should have received a score of four out of four in education and Teverbaugh should have received a score of two out of four in education. Jakubowski submitted that, with this "correction" in scoring, he would have outscored Teverbaugh overall. Jakubowski claimed that the scoring in education evidenced that he was denied the CSS position at

6

Vandalia based on race. The Department responded that Jakubowski did not submit, and the Department's investigation did not reveal, any evidence that IDOC discriminated against Jakubowski based on race or promoted a less qualified individual of a different race.

¶ 18 In its written order sustaining the Department's dismissal of Jakubowski's charge, the Commission explained it was improper for the Commission to substitute its judgment for IDOC's business judgment. The Commission reasoned that IDOC was "entitled to make employment decisions based on its reasonable belief of the facts surrounding the situation." The Commission noted in its order that the evidence did not show IDOC discriminated against Jakubowski. Jakubowski also did not show that other white individuals were overlooked for promotions or that IDOC treated similarly situated, non-white employees more favorably under similar circumstances.

¶ 19 The Commission sustained the Department's dismissal of Jakubowski's charge for lack of substantial evidence. Jakubowski then brought this petition for direct administrative review in this court.

¶ 20                                                ANALYSIS

¶ 21 The appellate court reviews the Commission's final order sustaining the dismissal of a discrimination charge for lack of substantial evidence under an abuse of discretion standard. *Young v. Illinois Human Rights Comm'n*, 2012 IL App (1st) 112204, ¶¶ 32-33. Under this standard, we will not disturb the Commission's decision unless it is arbitrary and capricious. *Young*, 2012 IL App (1st) 112204, ¶ 33. A decision is arbitrary and capricious if it contravenes the legislature's intent, fails to consider a crucial aspect of the

7

problem, or offers an impossible explanation contrary to agency expertise. *Young*, 2012 IL App (1st) 112204, ¶ 33. An abuse of discretion will be found where no reasonable person could agree with the Commission's decision. *Young*, 2012 IL App (1st) 112204, ¶ 33. The appellate court may not, however, reweigh the evidence or substitute its judgment for that of the Commission. *Young*, 2012 IL App (1st) 112204, ¶ 33.

¶ 22    In cases brought under the Human Rights Act, a complainant may prove employment discrimination through either direct or circumstantial evidence, or by the indirect method set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *Sola v. Illinois Human Rights Comm'n*, 316 Ill. App. 3d 528, 536-38 (1st Dist. 2000). Jakubowski does not argue, and the record does not show, that there was direct or circumstantial evidence of discrimination.

¶ 23    Under the indirect method of proof, Illinois courts utilize a three-part analysis in evaluating employment discrimination actions brought under the Human Rights Act. *Zaderaka v. Illinois Human Rights Comm'n*, 131 Ill. 2d 172, 178 (1989) (adopting analysis set forth in *McDonnell Douglas Corp.*, 411 U.S. at 802). First, the burden is on the complainant to establish a *prima facie* case of employment discrimination. *Zaderaka*, 131 Ill. 2d at 178-79. If the complainant establishes a *prima facie* case, a rebuttable presumption arises that the employer unlawfully discriminated against the complainant. *Zaderaka*, 131 Ill. 2d at 179. The employer must then articulate a legitimate, nondiscriminatory reason for its decision. *Zaderaka*, 131 Ill. 2d at 179. If the employer articulates a legitimate, nondiscriminatory reason, the burden shifts back to the complainant to prove that the employer's reason was a pretext for unlawful discrimination. *Zaderaka*, 131 Ill. 2d at 179.

8

¶ 24    To establish a *prima facie* case of discrimination, in situations involving the denial of a promotion, the complainant must show: (1) complainant was a member of a protected class; (2) complainant was qualified and applied for a promotion; (3) complainant was rejected; and (4) other equally or less qualified individuals, who were not class members, were promoted or the benefit remained open. *Board of Regents for Regency Universities v. Human Rights Comm'n*, 196 Ill. App. 3d 187, 196 (4th Dist. 1990); *McDonnell Douglas Corp.*, 411 U.S. at 802.

¶ 25    In reviewing the Department's dismissal of Jakubowski's charge for lack of substantial evidence, the Commission found that Jakubowski failed to establish a *prima facie* case of discrimination. We agree. Specifically, Jakubowski failed to prove that IDOC promoted an equally or less qualified candidate who was not white.

¶ 26    Jakubowski submitted that his educational background made him more, or at least equally, qualified to Teverbaugh for the CSS position. Education and training, however, was not the only category in which Jakubowski and Teverbaugh were scored. They were also asked the same questions and evaluated in knowledge and experience, leadership, planning, and judgment. Jakubowski did not dispute the scores in any of these other categories, and Teverbaugh outscored Jakubowski in both knowledge and experience and leadership.

¶ 27    As for the education and training category, Jakubowski and Teverbaugh both received the same score. Jakubowski believes that his formal education elevates him above Teverbaugh when considering educational credentials, but formal education was not the sole consideration in this category. IDOC's original job posting stated that the CSS position

9

required "education *and experience equivalent to a master's degree* in the behavioral or social sciences." (Emphasis added.) The candidate evaluation form used to score Jakubowski and Teverbaugh indicated that the category required "*knowledge, skill, and mental development equivalent to the completion of a master's degree* in the behavioral or social sciences." (Emphasis added.)

¶ 28　The evidence showed that Teverbaugh, in addition to his bachelor's degree in criminal justice, had over 20 years of experience in correctional counseling programming. If IDOC valued Teverbaugh's real world experience the same as Jakubowski's formal education, that determination is for IDOC to make. Reviewing courts do not substitute their judgment for the business judgment of an employer. See *Sola*, 316 Ill. App. 3d at 544-45; see also *Gorence v. Eagle Food Centers, Inc.*, 242 F.3d 759, 765 (7th Cir. 2001) ("What the qualifications for a position are *** is a business decision, one courts should not interfere with. [Citation.] We do not tell employers what the requirements for a job must be.").

¶ 29　Jakubowski's formal education does not in and of itself make him more, or at least equally, qualified to Teverbaugh. Apparently, IDOC valued experience that, in IDOC's opinion, equated to a master's degree. This court will not disturb IDOC's business judgment. After scoring all categories from the interviews, Teverbaugh received 0.25 points more than Jakubowski making Teverbaugh the more qualified candidate for the CSS position under IDOC's evaluation. Therefore, Jakubowski cannot prove that IDOC promoted an equally or less qualified individual who was not white.

10

¶ 30    This court need not reach the issue of pretext because Jakubowski has not established a *prima facie* case of discrimination. See *City of Belleville v. Human Rights Comm'n*, 167 Ill. App. 3d 834, 851 (5th Dist. 1988) (not reaching issue of pretext where the employer failed to articulate a legitimate non-discriminatory reason for its action); *In re C.R.M.*, 372 Ill. App. 3d 730 (1st Dist. 2007) (affirming Chief Legal Counsel's decision to dismiss charge of discrimination without considering issue of pretext where the petitioner failed to establish a *prima facie* case).

¶ 31    For the foregoing reasons, we affirm the Commission's order sustaining the Department's dismissal of Jakubowski's charge of discrimination.


¶ 32    Affirmed.