JAMES L. PECK, Petitioner-Appellant, v. THE DEPARTMENT OF HUMAN RIGHTS *et al.*, Respondents-Appellees.

Second District   No. 2—91—1134

Opinion filed September 10, 1992.—Rehearing denied October 14, 1992.

James L. Peck, of Westmont, petitioner *pro se.*

Roland W. Burris, Attorney General, of Springfield (Rosalyn B. Kaplan, Solicitor General, and Tanya Solov, Assistant Attorney General, of Chicago, of counsel), for respondent Human Rights Commission.

JUSTICE WOODWARD delivered the opinion of the court:

Petitioner, James L. Peck, *pro se,* petitions this court for review of the order of the Human Rights Commission dismissing his complaint against respondent TAD Technical Services Corporation for lack of substantial evidence. Petitioner's brief lists a number of issues which can be summarized as contentions that the commission erred in finding a lack of substantial evidence to support his complaints of handicap discrimination and retaliation.

Petitioner is an electronic technician, who is very sensitive to cigarette smoke. Respondent TAD Technical Services Corporation (TAD) is a temporary-service agency supplying workers to clients for a variety of temporary assignments. From January 1976 to February 1985 petitioner worked for TAD on an assignment at Rauland-Zenith. While at Zenith, petitioner had problems with a pipe smoker. Petitioner complained to TAD's branch manager, Robert Vogt, who brought him an air cleaner.

On January 13, 1986, petitioner began an assignment at Rockwell International. It is disputed whether Vogt informed Rockwell of petitioner's problems with smoke. In any event, on his first day on the job, petitioner became embroiled in a dispute regarding other employees' smoking. Because of problems arising from this incident, Rockwell terminated petitioner on January 14.

Petitioner filed a complaint against Rockwell with the Department of Human Rights alleging that Rockwell terminated him because of his physical handicap, an allergy to cigarette smoke. The Department dismissed the complaint for lack of substantial evidence, and that determination was upheld by the Human Rights Commission on review. On direct review to this court, we affirmed the dismissal. *Peck v. Department of Human Rights* (1988), 168 Ill. App. 3d 1162 (unpublished order under Supreme Court Rule 23).

After Rockwell terminated petitioner, TAD did not refer him for any more temporary positions. On March 23, 1987, petitioner filed a complaint against TAD with the Department of Human Rights. Petitioner alleged that TAD refused to give him further assignments based on his allergy to cigarette smoke, which petitioner contends is a

physical handicap. Petitioner further alleged that TAD retaliated against him for filing the previous human rights complaint against TAD's client, Rockwell. The Department conducted a preliminary investigation, including a fact-finding conference. The investigator recommended dismissal of the complaint for lack of substantial evidence. Petitioner filed a request for review with the Human Rights Commission, which sustained the dismissal. Petitioner then filed a request for direct review with this court pursuant to section 8—111 of the Human Rights Act and Supreme Court Rule 335 (Ill. Rev. Stat. 1989, ch. 68, par. 8—111; 134 Ill. 2d R. 335).

Plaintiff's brief lists eight issues, namely:

"Whether the matter raises legal issues of significant impact or the three-member panel decisions are in conflict.

Whether the Plaintiff presented sufficient evidence to establish a prima facie case of handicap discrimination.

Whether the Plaintiff presented sufficient evidence to establish a prima facie case of retaliation.

Whether the Plaintiff placed restrictions on assignments.

Whether the Plaintiff failed to comply with company policy.

Whether the Defendant was suffering a decrease in the economy.

Whether the Defendant aided and abeted [sic] Rockwell in its case.

Whether the Department of Human Rights properly investigated the matters of this case."

The first, seventh and eighth issues are not supported by any citation of relevant authority in violation of Supreme Court Rule 341(e)(7) (134 Ill. 2d R. 341(e)(7)) and are therefore waived. (McDuffee v. Industrial Comm'n (1991), 222 Ill. App. 3d 105, 111.) The fourth, fifth and sixth issues relate to TAD's assertions of legitimate reasons for not rehiring respondent. Thus, all the issues which petitioner has properly preserved for review can be summarized as whether the Commission's decision that substantial evidence was lacking to support petitioner's charges of handicap discrimination and retaliation was against the manifest weight of the evidence.

In analyzing employment discrimination actions under the Human Rights Act, Illinois courts have used the three-part analysis set out in McDonnell Douglas Corp. v. Green (1973), 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817. (Zaderaka v. Illinois Human Rights Comm'n (1989), 131 Ill. 2d 172, 178.) First, plaintiff must establish by a preponderance of the evidence a prima facie case of unlawful discrimination. If he does so, a rebuttable presumption arises that the

employer unlawfully discriminated. To rebut the presumption, the employer must articulate, not prove, a legitimate, nondiscriminatory reason for its decision. If the employer carries its burden of production, the presumption of discrimination falls, and the plaintiff must then prove by a preponderance of the evidence that the employer's articulated reason was not the true reason, but was instead a pretext for unlawful discrimination. *Texas Department of Community Affairs v. Burdine* (1981), 450 U.S. 248, 259-60, 67 L. Ed. 2d 207, 219, 101 S. Ct. 1089, 1097; *Zaderaka*, 131 Ill. 2d at 178-79.

■ In reviewing the Commission's decision to dismiss a complaint for lack of substantial evidence, the court determines whether the Commission's action was arbitrary and capricious, or an abuse of discretion. (*Castillo v. Human Rights Comm'n* (1987), 159 Ill. App. 3d 158, 162-63; *Sanders v. United Parcel Service* (1986), 142 Ill. App. 3d 362, 365.) It is within the special province of the Commission to review and weigh conflicting evidence, whether at the preliminary investigation level or at a later stage. *Sanders*, 142 Ill. App. 3d at 365.

The Commission's order dismissing the complaint contains the following findings of fact:

"2. The evidence demonstrates that Respondent denied Complainant job placement because Complainant failed to comply with company policy, i.e. failed to keep Respondent apprised of his whereabouts and availability and also because Respondent was suffering due to a decrease in the economy.

3. That Complainant did not establish the elements of a prima facie case of handicap discrimination.

4. That Respondent did not retaliate against Complainant."

Neither the Department nor the Commission conducted a formal evidentiary hearing. The Department collected evidence through pleadings filed by the parties, investigatory interviews and an informal fact-finding conference. Petitioner advanced his contention that he had been denied placement because of his handicap and in retaliation for filing the complaint against Rockwell. TAD elucidated a number of responses.

First, although Vogt was aware generally of petitioner's distaste for cigarette smoke, petitioner had never provided any medical evidence of the nature or extent of his condition. Vogt stated that the word "handicap" never arose in conjunction with petitioner's condition until the fact-finding conference.

Second, economic conditions had sharply reduced the demand for electronic technicians during the relevant period. Vogt asserted that this condition was exacerbated by petitioner's restrictions upon the

jobs he would accept. Petitioner allegedly required a position within 20 miles of his home, with a smoke-free environment, a minimum pay rate of $13.30 per hour and a "safe" parking lot for his car. Moreover, during this time period, petitioner failed to keep in constant contact with TAD and inform it of his whereabouts. These factors effectively prevented TAD from placing petitioner. A list provided by TAD showed only two positions occurring between January 1986 and August 3, 1990, the date of the fact-finding conference, for which petitioner was qualified and which complied with his alleged conditions. On April 1, 1987, Vogt offered to meet with petitioner at TAD's offices, but he declined.

This evidence apparently formed the basis for the Commission's conclusion that TAD articulated legitimate, nondiscriminatory reasons for the failure to place petitioner: the lack of positions due to the "decrease" in the economy and petitioner's failure to stay in contact with TAD.

In this court, petitioner's contentions are somewhat hazy. Essentially, however, he contests the Commission's factual findings. His initial brief and reply brief are replete with examples of alleged inaccuracies in the Department's report. We note that this court does not review the findings of the Department, but can only review the final order of the Commission. See *Milan v. Human Rights Comm'n* (1988), 169 Ill. App. 3d 979, 983.

Initially, it is not clear that petitioner has established that he is handicapped. Petitioner has not cited any reported case which held that an allergy to cigarette smoke is a physical handicap. At least one case has held that it is not. (*Gasp v. Mecklenburg County* (1979), 42 N.C. App. 225, 256 S.E.2d 477.) Moreover, the record before the Commission is sketchy at best. This is due, in part, to the chameleon-like nature of petitioner's argument. At times, he appears to argue that he actually is handicapped. At other times, he claims that he is not handicapped, but that TAD perceived him to be so. (See Ill. Rev. Stat. 1989, ch. 68, par. 1—103(I)(1).) In any event, before the Department, petitioner submitted only a doctor's report of a test done August 21, 1986, which states "Tobacco 3+," "Histamine Control -4+ +." No explanation of these numbers was provided. Petitioner's request for review by the Commission contains additional medical records, similarly without explanation. A handwritten note from Dr. N. Arora states that petitioner "seems to have Allergic Rhinitis *** Such patients do get bothered by tobacco smoke as a shop irritant."

Despite the lack of evidence, the Commission appears to have assumed that petitioner either was actually handicapped or was perceived

as such by TAD. Likewise, the Commission's brief in this court assumes for the sake of argument that petitioner adequately established his handicapped status, contending that TAD nevertheless articulated a legitimate, nondiscriminatory reason for not placing petitioner. Following this analysis, we conclude that the Commission's finding was not against the manifest weight of the evidence.

The Commission found that TAD's failure to place petitioner was due solely to the lack of positions for electronic technicians and petitioner's failure to maintain contact with TAD. Initially we note that, although petitioner contends that he was "not aware of a decrease in the economy," he failed to produce evidence to refute TAD's claim that few positions were available. Petitioner did not introduce, for example, evidence of any positions (other than the two listed by TAD) for which he was qualified but about which he was not contacted.

Petitioner also contests the Commission's finding that he failed to maintain contact. Petitioner contends that TAD did not inform him of any such policy. Moreover, he alleges that TAD was at all times able to contact him because it had the phone number of his aunt in Beardstown, and she knew where to contact him. He argues that if TAD had desired to place him, it could have called his aunt and learned his whereabouts.

Petitioner's arguments miss the point. The Commission found initially that few positions were available. TAD presumably had people other than petitioner who were qualified for these positions. It is a matter of common sense that TAD would attempt to fill these positions with the individuals who showed the most interest in them by calling regularly. These people would likely demonstrate the most enthusiasm to the clients. Also, TAD would obviously offer the positions first to someone it was able to contact easily. It was not required to go through the circuitous procedure of calling petitioner's aunt in Beardstown, who might or might not know how to reach him on short notice.

TAD articulated legitimate, nondiscriminatory reasons for failing to place petitioner in additional temporary positions. Petitioner failed to produce subsequently evidence that these reasons were in fact pretextual. Thus, the Commission's finding of a lack of substantial evidence to support the charges was not against the manifest weight of the evidence.

For the foregoing reasons, the decision of the commission dismissing petitioner's complaint is affirmed.

Affirmed.

DOYLE and GEIGER, JJ., concur.