No. 2--97--0576 

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

DARCY TRUGER,

     Petitioner,

v.

THE  DEPARTMENT OF HUMAN RIGHTS, THE ILLINOIS HUMAN RIGHTS COMMISSION, and DE KALB COUNTY SPECIAL EDUCATION ASSOCIATION,

     Respondents.

)

)

)

)

)

)

)

)

)

)

)

)

)

Appeal from the Human Rights Commission, Chicago.

Charge No.  1992--CN--2368

JUSTICE COLWELL delivered the opinion of the court:

Petitioner, Darcy Truger, appeals from an order of the Illinois Human Rights Commission (Commission) affirming the Human Rights Department's (Department) dismissal of her charge of discrimination against respondent, De Kalb County Special Education Association, for lack of substantial evidence.  Petitioner had alleged respondent refused to hire her for the position of social worker in an alternative high school for students with behavior disorders because of her handicap, visual impairment, in violation of the Illinois Human Rights Act (Ill. Rev. Stat. 1991, ch. 68, par. 1--101 
et
 
seq
. (now 775 ILCS 5/1--101 
et
 
seq
. (1996))).  We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

On February 28, 1992, petitioner filed a charge of discrimination against respondent with the Department.  Petitioner alleged that, on September 5, 1991, respondent discriminated against her by denying her employment as a school social worker because of her physical handicap, visual impairment.  Petitioner stated that the reasons given for the denial of employment were that she lacked experience with behavior disorder students and that her visual impairment was a liability.  Petitioner explained that she believed she was discriminated against because (1) respondent was aware of her physical handicap; (2) respondent contacted her regarding the school social worker vacancy; (3) according to the job description, she was qualified for the position; (4) during an interview on August 26, 1991, respondent's director told her that he would like to hire her and gave her a pay scale and other preemployment information; (5) respondent's director suggested that she observe the school; and  (6) respondent's director expressed his concern that the students could become aggressive with her and that there was a possible risk of injury due to her visual impairment. Petitioner further explained that she assured respondent's director of her ability to handle herself in potentially dangerous situations and that she believed working with students therapeutically lessened the chances of the students becoming aggressive with her.

The Department conducted an investigation of petitioner's charge and interviewed petitioner; Mr. Bill Peters, respondent's executive director; Ms. Virginia Weckerly, a school counselor; and Ms. Janice Blickman, director of student services.  The Department also reviewed the following documents: (1) a school social worker job description; (2) petitioner's employment application; (3) an August 16, 1991, newspaper advertisement for the position; (4) a detailed job description for social worker; (5) the employment application of Mr. Michael Postic; (6) petitioner's interview results; and (7) Mr. Postic's interview results.

According to the Department's investigation report, petitioner stated that she received her masters degree in social work in the spring of 1991.  Petitioner claimed that during her interview she explained that she lacked any experience with behavior disordered children but noted that she had a little experience with aggressive students.

Petitioner further stated that she was told that if the position was not filled, respondent would contract out the services.  Petitioner believed respondent was interested in her, and she received pay scale information.  After the two-day observation period, respondent informed her that they would get back to her with a decision.

Petitioner stated that she felt she was discriminated against because, even though she lacked experience with behavior disordered students, she informed respondent that she would never put herself or anyone in danger.  Petitioner also noted that respondent hired a less qualified applicant.

Mr. Peters stated that respondent had two social worker positions open and, during an interview on August 21, 1991, petitioner expressed interest only in the position at the Alternative High School for the Behavior Disordered.  Mr. Peters explained that the school was for students with behavior disabilities, and, historically, it consisted of the toughest 2% of the student population.  The students have conduct disorders, as well as emotional disorders, and can become extremely aggressive and require physical restraint.

Mr. Peters further stated that petitioner's primary social work emphasis involved developmental disabilities, but petitioner told him that she could handle the situation with little difficulty.  Petitioner was then offered an opportunity for a two-day trial observation period.

Mr. Peters was not present during petitioner's visit, but conferred with the school principal and staff who informed him that petitioner failed to pick up "antecedent signals" that precede disruptive behavior.  Mr. Peters explained that he was told petitioner seemed unaware of teasing going on around her and displayed little interaction with the students.  According to Mr. Peters, petitioner was not hired because of her lack of any experience with this type of student population and because of the possibility of violence affecting herself and others.

Mr. Peters also noted that respondent did not hire anyone for this position.  Instead, respondent contracted out the services to an existing psychiatrist who had previously counseled some of the students.  Petitioner did hire Mr. Postic for the other position that petitioner rejected.

Ms. Weckerly stated she had been involved with the program for 13 years and she led the team that included the vacant social worker position.  During petitioner's visit, Ms. Weckerly noticed petitioner's extremely limited sight and observed petitioner knocking over certain unspecified objects.  Ms. Weckerly also noticed that the students made inappropriate comments and gestures, but petitioner seemed unaware of the student's conduct.  In addition, the students got out of hand while petitioner addressed the class.

Ms. Weckerly further stated that she had explained in detail to petitioner what type of subtle facial expressions or hand gestures preceded violent behavior.  Ms. Weckerly also explained what a physical restraint entailed.

Ms. Blickman stated that she discussed the position with petitioner and the purpose of the visit was for petitioner to observe the students and for respondent to observe petitioner.  Ms. Blickman was concerned about petitioner's lack of experience.  According to Ms. Blickman, the staff has to be proactive.

The Department's report concluded that petitioner was inexperienced with behavior disordered students, and respondent denied her the position based upon her inexperience and its legitimate concern for safety.  The Department further found that the position was filled, as petitioner alleged.  Accordingly, the Department dismissed petitioner's charge for lack of substantial evidence.

Thereafter, petitioner filed a request for review of the Department's decision.  In support, petitioner filed a memorandum of law and an affidavit.

In her memorandum of law, petitioner alleged that the Department's investigator improperly decided materially contested facts against her.  Petitioner claimed she alleged facts establishing a 
prima
 
facie
 case of handicap discrimination.  Petitioner also argued that the Department improperly considered the risk of future injury in its hiring decision. 

In her affidavit, petitioner averred that she had a bachelor of science degree in family and social services from Northern Illinois University and a master of arts degree from Loyola University.  Petitioner was licensed by the State of Illinois as a social worker with a Type 73 certification.  Petitioner further noted her prior training and experience as a social worker working with adolescents who had aggressive tendencies.  

Petitioner noted her disability was in the form of a visual impairment known as retinopathy prematurity.  According to petitioner, her visual impairment did not prevent her from functioning or affect her mobility and she was able to read normal size print with a magnifying glass.

Petitioner then reviewed her interviewing experience with Mr. Peters and Ms. Blickman.  Petitioner claimed Mr. Peters told her on three occasions that he wanted to hire her and that there were no other applicants for the position.  Mr. Peters also gave her a copy of the school's calendar and policy handbook.

During her two-day observation period, she understood that she was merely to observe and not engage in any other activity.  Petitioner denied that she was asked to or that she engaged in any interactions with the students.  Petitioner also denied that during her visit she bumped into any objects or that she had any trouble moving about.  Petitioner further denied that during her visit the students became unruly or aggressive or that staff members needed to intervene so the students would not become unruly or aggressive.

Petitioner claimed Mr. Peters told her that he had found someone else who had more experience with students with behavior disorders and that her vision was a liability.  Petitioner stated that respondent never asked her about the nature or extent of her visual impairment prior to advising her that she would not be hired.

On January 24, 1997, the Commission affirmed the Department's dismissal of petitioner's charge of discrimination.  The Commission summarized respondent's position as "success as a social worker in the alternative high school depends on being able to recognize subtle facial expressions and hand gestures."  The Commission found that respondent believed petitioner's condition interfered with her ability to recognize these subtle signs.

The Commission noted petitioner's position that she did not witness any students become unruly or aggressive during her visit but found that petitioner's position did not contradict the statements made by respondent.  Instead, the Commission found that the essence of respondent's testimony was that petitioner appeared to be unaware of inappropriate comments and gestures.

The Commission also found petitioner failed to present any evidence that she ever worked successfully with a behavioral disordered population.  The Commission further found that respondent made an independent assessment of petitioner's capabilities and found that petitioner's condition interferes with her ability to recognize impending aggressive situations.  As a result, the Commission found petitioner's visual impairment was not a handicap because it was related to her ability to the job in question.

On February 25, 1997, petitioner filed a petition for direct review of the Commission decision.

ANALYSIS

Petitioner first contends that the Commission dismissed her charge based upon an erroneous standard of review.  Similarly, petitioner also contends her allegations and facts supported a 
prima
 
facie
 case of handicap discrimination.

When a charge of discrimination is filed, a Department investigator investigates the facts and allegations set forth in the charge by interviewing witnesses, by examining records and documents, and by conducting a fact finding conference to be attended by the petitioner and the respondent.  Ill. Rev. Stat. 1991, ch. 68, par. 7A--102(C)(1), (C)(2), (C)(4) (now 775 ILCS 5/7A--102(C)(1), (C)(2), (C)(4) (West 1996)).  The petitioner may supplement the record at any time while the investigation of the charge is pending.  Ill. Rev. Stat. 1991, ch. 68, par. 7A--102(B) (now 775 ILCS 5/7A--102(B) (West 1996)).  At the conclusion of the investigation, the investigator prepares a report, and the Department's director determines whether there is substantial evidence of the alleged violation.  Ill. Rev. Stat. 1991, ch. 68, par. 7A--102(D)(1), (D)(2) (now 775 ILCS 5/7A--102(D)(1), (D)(2) (West 1996)).  If there is a lack of substantial evidence, the Department will dismiss the charge, and the petitioner may seek review before the Commission.  Ill. Rev. Stat. 1991, ch. 68, par. 7A--102(D)(2)(a) (now 775 ILCS 5/7A--102(D)(2)(a) (West 1996)).

In reviewing the Department's findings, the Commission may consider the Department's report, any argument and supplemental evidence submitted, and the results of any additional investigation.  Ill. Rev. Stat. 1991, ch. 68, par. 8--103(B) (now 775 ILCS 5/8--103(B) (West 1996)).  When considering whether there is substantial evidence to support a charge, the Commission's function is to review the Department's factual findings and determine whether there is enough evidence to support the filing of a charge.  
Marinelli v. Human Rights Comm'n
, 262 Ill. App. 3d 247, 253 (1994).  The Commission is not to resolve credibility issues or questions of fact.  
Marinelli
, 262 Ill. App. 3d at 253.  The Commission must adopt the Department's factual findings unless they are against the manifest weight of the evidence.  
Marinelli
, 262 Ill. App. 3d at 253.  The Commission's decision is then subject to judicial review in the appellate court.  Ill. Rev. Stat. 1991, ch. 68, par. 8--111(A)(1) (now 775 ILCS 5/8--111(A)(1) (West 1996)).

This court will not disturb the Commission's decision to dismiss a complaint for lack of substantial evidence, unless that decision was arbitrary and capricious or an abuse of discretion.
  
Marinelli
, 262 Ill. App. 3d at 253.  We review the Commission's decision, not the Department's decision.  
Marinelli
, 262 Ill. App. 3d at 253.

In analyzing employment discrimination actions brought under the Act, Illinois courts have adopted the three-part analysis set forth in 
McDonnell Douglas Corp. v. Green
, 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817, (1973).  
Peck v. Department of Human Rights
, 234 Ill. App. 3d 334, 336 (1992).  First, petitioner must establish by a preponderance of the evidence a 
prima
 
facie
 case of unlawful discrimination.  
Peck
, 234 Ill. App. 3d at 336.  If this is done, then a rebuttable presumption arises that the employer unlawfully discriminated.  
Peck
, 234 Ill. App. 3d at 336-37.  The employer must then articulate, not prove, a legitimate, nondiscriminatory reason for its decision.  
Peck
, 234 Ill. App. 3d at 337.  If this is done, the presumption of discrimination is rebutted.  
Peck
, 234 Ill. App. 3d at 337.  The petitioner must then prove by a preponderance of the evidence that the employer's articulated reason was not the true reason, but was instead a pretext for unlawful discrimination.  
Peck
, 234 Ill. App. 3d at 337.

In this case, to establish a 
prima
 
facie
 case of physical handicap discrimination, petitioner must establish (1) that she was handicapped within the Act's definition, (2) that she was not hired and that that decision was related to her handicap, and (3) that her handicap was unrelated to her ability to perform the job.  See 
Milan v. Human Rights Comm'n
, 169 Ill. App. 3d 979, 984 (1988).  A charge may be dismissed for lack of substantial evidence where the petitioner fails to present substantial evidence of an element of a 
prima
 
facie
 case.  See 
Parham v. Macomb Unit School District No. 185
, 231 Ill. App. 3d 764, 772 (1992).  

The Commission found petitioner failed to establish the third requirement of her 
prima
 
facie
 case.  We agree.  We also believe the Commission could have found petitioner failed to establish the second requirement of her 
prima
 
facie
 case.

Petitioner sought the position of social worker at an alternative high school for students with behavior disorders that included the toughest 2% of the student population.  These students can become extremely aggressive and require restraint.  As a result, a social worker at the high school must be proactive and be able to recognize subtle facial expressions or hand gestures that precede violent behavior.  In addition, such a social worker must be able to perform a physical restraint.  According to Ms. Weckerly, a school counselor with 13 years of experience and the head of the team, petitioner seemed unaware of the students' inappropriate comments and gestures.  In addition, Mr. Peters was told by the school principal and staff that petitioner failed to pick up on "antecedent signals" that precede disruptive behavior and seemed unaware of teasing going on around her.

Petitioner admittedly lacked experience working with students with behavior disorders, even if she had a little experience working with aggressive students.  Ms. Blickman stated that she was concerned with petitioner's lack of experience, and Mr. Peters stated that petitioner was not hired because of her lack of experience with students with behavior disorders and their penchant for violence.  We note that petitioner had just received her masters degree in the spring of 1991 and the interview was in August of 1991.  Furthermore, petitioner failed to present any substantial evidence of any prior experience with students with behavior disorders or that her degrees or licensing qualified her to work with students with behavior disorders.  As a result, petitioner offered no evidence that to be qualified as a social worker is the equivalent of being qualified to work with students with behavior disorders.

These facts support two possible conclusions.  The facts support the Commission's conclusion that petitioner's visual impairment prevented her from performing a critical job function--recognizing subtle signs which precede violence--of a social worker working with students with behavior disorders such as those found at the alternative high school.  In addition, the facts support another conclusion--petitioner was not hired because she was not qualified as a result of her lack of experience.  Thus, her lack of experience may have been the reason she was unaware of the students' inappropriate behavior.  We therefore conclude that the Commission's decision of a lack of substantial evidence was not an abuse of discretion.

Petitioner also contends that, regardless of the Commission's standard of review, the Commission erred by weighing the credibility of the witnesses in respondent's favor.  We disagree.

Petitioner claims she presented evidence that contradicts the Commission's findings that the students made inappropriate comments and gestures and that the students got out of hand.  Petitioner's affidavit stated that no students became unruly or aggressive during her visit.  No one claimed, however, that the students became unruly or aggressive.  Instead, Ms. Weckerly claimed petitioner seemed unaware of the signs that precede violent behavior, and the school's principal and staff likewise reported to Mr. Peters that petitioner was unable to recognize such "antecedent signals."  Petitioner failed to present any evidence that contradicted such claims, and the Commission based its decision primarily on petitioner's inability to recognize these subtle signs.  Accordingly, we find the Commission did not weigh the evidence or resolve issues of credibility in respondent's favor; the Commission properly determined whether there was substantial evidence to support a charge.

Petitioner further contends the Commission improperly permitted respondent to raise a defense to petitioner's charge based upon respondent's generalized fear of a future safety risk.  The Commission, however, expressly noted that respondent made an individualized assessment of petitioner's capabilities in accordance with 
Raintree Health Care Center v. Illinois Human Rights Comm'n
, 173 Ill. 2d 469 (1996) and believed that petitioner's visual impairment interfered with her ability to recognize signs of impending violence.  The Commission's conclusion is supported by respondent's observation of petitioner during her two-day observation period.  In addition, the Commission did not consider respondent's position as a defense based on generalized future safety risks.  Rather, the Commission found petitioner failed to satisfy an element of her 
prima
 
facie
 case. We further note that petitioner's conduct does not impose a blanket restriction against individuals with visual impairments as social workers at the alternative high school.  Respondent's actions only indicate that it did not believe petitioner was qualified, whether because of her visual impairment or her lack of experience.

Finally, petitioner contends the Commission erred when it failed to consider whether respondent offered petitioner a reasonable accommodation.  An employer's duty to accommodate does not attach until the employee asserts that she would have performed the essentials of the job if afforded a reasonable accommodation.  
Illinois Bell Telephone Co. v. Human Rights Comm'n
, 190 Ill. App  3d 1036, 1050 (1989).  In addition, the employee has the burden of asserting the duty and showing the accommodation was requested and necessary for adequate job performance.  
Whipple v. Department of Rehabilitation Services
, 269 Ill. App. 3d 554, 557 (1995).  Petitioner presented no evidence that she asked for a reasonable accommodation or that any type of accommodation would enable her to recognize the subtle antecedent signs of violence.  Consequently, petitioner's contention is rejected.

For the foregoing reasons, we affirm the Commission's decision dismissing petitioner's charge of discrimination.

Affirmed.

McLAREN and THOMAS, JJ., concur.