THE DEPARTMENT OF CORRECTIONS, Petitioner-Appellant, v. THE HUMAN RIGHTS COMMISSION *et al.*, Respondents-Appellees.

Third District   No. 3—97—1007

Opinion filed July 31, 1998.

Justin D. Smock (argued), of Chicago, for petitioner.

Kent Sezer, of Human Rights Commission, and James E. Ryan, Attorney General (Barbara A. Preiner, Solicitor General, and Laura Wunder (argued), Jan E. Hughes and Mary McDermott, Assistant Attorneys General, of counsel), both of Chicago, for respondent Human Rights Commission.

Thomas W. Duda (argued), of Law Offices of Thomas W. Duda, of Arlington Heights, for respondent Claudia Green.

PRESIDING JUSTICE HOMER delivered the opinion of the court:
The Illinois Department of Corrections discharged Claudia Green

after determining that she was unable to perform the essential functions of her position as correctional sergeant due to a shoulder injury and that there was no accommodation available for her. On Green's behalf, the Illinois Department of Human Rights filed a complaint for handicap discrimination against the Department of Corrections. The Human Rights Commission adopted, *in toto*, the findings and decision of the administrative law judge in favor of Green. The Department of Corrections appeals.

## FACTS

Claudia Green began working for the Illinois Department of Corrections (DOC) in 1978 and eventually attained the position of correctional sergeant. As a member of the DOC's security staff at the Joliet Correctional Center (the Center), Green's job requirements included annual firearms requalification with a handgun, rifle and shotgun. In August 1985, Green successfully requalified with a handgun and rifle. However, while shooting the shotgun, her right shoulder was injured when she slipped and was struck by the recoil.

Green took a leave of absence and underwent three surgical procedures on her shoulder and arm between August 1985 and January 1988. According to her testimony, she returned to work for approximately one month in April 1988 and worked as a dispatcher in the Center's armory. After reinjuring her shoulder during physical therapy, Green had to take leave again and underwent more surgery.

On July 19, 1988, Green was released to return to work with certain restrictions which included avoiding heavy lifting away from her body and refraining from firing a shotgun from her right shoulder. Green did not resume working at that time because the DOC instigated disciplinary proceedings against her alleging that she was in violation of several of its administrative directives. The DOC contended that Green should be discharged because she was unable to return to work with a full medical release and unable to perform her duties as a correctional sergeant, namely, satisfy the firearms requalification.

At her predisciplinary hearing in July 1988, Green's union representative stated that Green believed that she could return to work with the limitation of not handling weapons. Bruce Burger, the executive assistant to the warden, served as the hearing officer and was charged with the duty to make a recommendation regarding Green's discipline to the chief administrative officer. After reviewing the charges, statements and other evidence, Burger recommended that Green be discharged because she was permanently disabled.

Burger testified during the administrative review proceedings that

his recommendation was based upon, *inter alia*, the return to work policy set forth in the DOC administrative directives. At the time, these directives provided that an employee may only return to work with restrictions if the restrictions are "temporary in nature and limited to a specific period of time not to exceed 90 days, after which the employee is expected to return to work on a full-time basis with no restrictions." Similarly, its policy statement with respect to employees with medical restrictions provided:

> "An employee who has been on a medical leave of absence or an extended sick leave must obtain a full medical release prior to being allowed to return to work unless permission to return to work with limited restrictions has been granted by the Deputy Director of the appropriate division or bureau. However, no employee shall be allowed to return to work with restrictions where long term recuperation (in excess of 90 days) is involved or where the return to work may contribute to reoccurrence of the medical condition."

After receiving notice of the recommendation to discharge, Green's attorney filed a written request with the DOC for handicap accommodation in accordance with the Illinois Human Rights Act (the Act) (775 ILCS 5/1—101 *et seq.* (West 1996)). Green requested that her handicap be accommodated and that she be reinstated to her position as correctional sergeant. She also implied that she would welcome alternative placement in another position that did not require the handling of weapons. This request for accommodation was reviewed by Janet Richmond, the administrator of the DOC's office of affirmative action. Richmond considered Green's eligibility in light of her injury for two positions, correctional sergeant and correctional clerk. After studying the issue, Richmond determined that Green could not be accommodated because she could not perform the essential duties of either position. Thereafter, Green was discharged.

The Illinois Department of Human Rights (Department) then instigated the instant complaint for handicap discrimination under section 7A—102 of the Act (775 ILCS 5/7A—102 (West 1996)). A public hearing was held after which the administrative law judge made, *inter alia*, the following findings: (1) Green had made a *prima facie* case of handicap discrimination; (2) DOC articulated a legitimate reason for its actions; and (3) Green proved by a preponderance of the evidence that the DOC's articulated reason was a pretext for unlawful discrimination. The judge noted that it was a stipulated fact that Green could perform every duty of a correctional sergeant, except for firing a shotgun while resting the butt against her right shoulder. Also, the judge determined that the DOC made no effort to meet with Green before deciding that no accommodation would be attempted

and the DOC could have trained Green to fire a shotgun using her other shoulder. Green was subsequently awarded $10,741.67 in lost pay and $13,364.30 in costs and attorney fees.

The Illinois Human Rights Commission (Commission) denied the DOC's petition for review of the administrative law judge's decision and adopted his recommended order and decision as its own. The instant appeal followed.

## ANALYSIS

■ Employment discrimination actions filed under the Act are governed by the three-part analysis set out in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973). See *Truger v. Department of Human Rights*, 293 Ill. App. 3d 851, 858, 688 N.E.2d 1209, 1213 (1997). First, plaintiff must establish a *prima facie* case of discrimination which will give rise to a rebuttable presumption that the employer unlawfully discriminated. Next, the employer may rebut the presumption by articulating a legitimate and nondiscriminatory reason for its actions. If the employer meets its burden of production, the presumption of discrimination falls. Then, the plaintiff must prove by a preponderance of the evidence that the employer's reason was simply a pretext for unlawful discrimination. *Peck v. Department of Human Rights*, 234 Ill. App. 3d 334, 600 N.E.2d 79 (1992). The Commission's decision regarding a discrimination claim will only be reversed on appeal if it is contrary to the manifest weight of the evidence. *Interstate Material Corp. v. Human Rights Comm'n*, 274 Ill. App. 3d 1014, 654 N.E.2d 713 (1995).

■ In the instant appeal, the DOC takes issue with the Commission's determination that Green had made a *prima facie* case of handicap discrimination. To establish a *prima facie* case a complainant must demonstrate that: (1) she is handicapped as defined in the Act; (2) her handicap is unrelated to her ability to perform the functions of the job she was hired to perform; and (3) an adverse job action was taken against her because of the handicap. *Truger*, 293 Ill. App. 3d at 859, 688 N.E.2d at 1213. Under the Act, "handicap" is defined as follows:

> "a determinable physical or mental characteristic of a person, *** the history of such characteristic, or the perception of such characteristic by the person complained against, which may result from disease, injury, congenital condition of birth or functional disorder and which characteristic:
>> *** is unrelated to the person's ability to perform the duties of a particular job or position." 775 ILCS 5/1—103(I)(1) (West 1996).

■ In the instant case, the DOC does not dispute that the evidence

supports the Commission's finding that Green's shoulder condition was a determinable physical characteristic resulting from an injury. Further, the DOC admits that its decision to discharge Green was directly related to her shoulder condition. The DOC contends, however, that Green's *prima facie* case was fatally flawed because her shoulder condition was, in fact, related to her ability to perform an essential function of her job. We disagree.

While the DOC is correct in stating that the Commission found that the ability to use a shotgun was, in fact, an essential function of the correctional sergeant position, it does not follow that Green's condition rendered her unable to perform that function. The DOC stipulated that Green was able to perform every duty of a correctional sergeant except for firing a shotgun while resting the butt of the weapon against her right shoulder. The fact that she could have attempted to qualify using her left shoulder, as evidence showed other employees had done in the past, demonstrates that she could have potentially fulfilled all the job requirements despite her injury through such accommodation.

However, the DOC contends that the only accommodation it believed that Green would accept was placement in a position not requiring the use of firearms and that such accommodation was unreasonable. DOC appears to argue that because Green did not specifically request to be retrained to use her left arm and shoulder to fire a shotgun, it had no obligation to consider such an accommodation. We disagree.

In promulgating its interpretive rules, the Department augmented the *prima facie* requirements to address the issue of handicap accommodation. Under the rules, an employer must provide reasonable accommodation for known physical limitations of otherwise qualified handicapped employees unless the employer can demonstrate that such accommodations would be prohibitively expensive or would unduly disrupt the ordinary conduct of business. 56 Ill. Adm. Code § 2500.40 (1997). The employee bears the burden of asserting the duty to accommodate; showing that accommodation was, in fact, requested; and demonstrating that accommodation was necessary for adequate job performance. *Milan v. Human Rights Comm'n*, 169 Ill. App. 3d 979, 984, 523 N.E.2d 1155, 1159 (1988).

Green's request for accommodation was twofold: (1) she requested reinstatement to her position as correctional sergeant and (2) she implied that she would welcome alternative placement in another position that did not require the handling of weapons. The DOC's characterization of her request as "specifically and explicitly reject-[ing]" any accommodation that included the use of weapons is

unfounded. There is nothing in the record to support the DOC's conclusion that it was not obligated to consider such accommodation because, if offered, Green would not have accepted it anyway.

The DOC was fully aware of Green's physical limitation and had at its disposal the resources to ascertain a simple, reasonable accommodation which was readily apparent and available. Despite this fact, the DOC took the erroneous position that it was not obligated to do anything but determine the reasonableness of the specific accommodation requested by Green. Once an employee requests an accommodation, it becomes the burden of the employer to show that there is no possible reasonable accommodation or that the employee would be unable to perform the job even with the accommodation. See *Matter of Hunter v. Rock Island Housing Authority*, Ill. Hum. Rts. Comm'n Rep. 1990CN1473 (May 3, 1996).

In this case, the record reveals that the DOC made very little effort to identify an appropriate and reasonable accommodation for Green's handicap. Richmond's investigation into the matter consisted of review of some medical records pertaining to Green's condition and two 15-minute phone calls, one to the workers' compensation coordinator and one to a vocational rehabilitation counselor who had worked with Green in the past. Richmond acknowledged that she never contacted Green or her attorney to discuss Green's handicap or possible accommodations. Richmond also admitted that she never considered any accommodation involving Green's use of firearms.

The record also reveals that the DOC was well aware that it was possible to successfully train a person to use her nondominant arm and shoulder for the purpose of firing a shotgun. In fact, such training had been provided to other DOC employees on several occasions in the past. This simple and inexpensive accommodation, which would have permitted Green to meet the only unfulfilled job requirement, was not even considered an option by the DOC prior to Green's discharge.

The DOC contends, however, that firearms retraining was not truly an "accommodation" as intended by the Act because the DOC directives did not dictate which arm or hand employees should use during firearms requalification anyway. Under the administrative rules, "accommodation" may include: "alteration of the facility or work site; modification of work schedules or leave policy; acquisition of equipment; job restructuring; provision of readers or interpreters; and other similar actions." 56 Ill. Adm. Code § 2500.40 (1997). We find that it was not error for the Commission to determine that providing Green with specialized training in the use of weapons with her nondominant arm and uninjured shoulder and allowing her to attempt to requalify again were methods of accommodation contemplated under the Act.

Under the circumstances, we affirm the Commission's determination that Green established a *prima facie* case of handicap discrimination and that the DOC failed to take sufficient steps to accommodate Green's handicap.

■ As a final contention, the DOC argues that the Commission erred in finding liability based, in part, upon a DOC policy that was *per se* violative of the Act. The DOC concedes that the return to work policy as set forth in the administrative directives violated the Act by providing for the discharge, without exception, of any employee on medical leave who was unable to return to work without restriction within 90 days. However, the DOC contends that this provision was not the basis of the decision to terminate Green; therefore, the directive in no way disadvantaged Green and should not have provided the basis for a finding of liability in this case. After reviewing the record, we disagree.

The record clearly shows that the decision to discharge Green was based, in part, upon the subject administrative directives. Burger, the predisciplinary hearing officer, testified that the administrative directives regarding the return to work policy were considered as a part of his decision-making process. In fact, he believed that those directives mandated a recommendation for Green's discharge because she had been unable to return to work without restriction within the 90-day time period and had not obtained a full medical release. Consequently, it was not improper for the Commission to find that, to the extent that the DOC relied upon invalid administrative directives, it violated the Act when it discharged Green.

## CONCLUSION

For the forgoing reasons, the decision of the Illinois Human Rights Commission is affirmed.

Decision affirmed.

BRESLIN and LYTTON, JJ., concur.