FOURTH DIVISION

FILED: 11/12/98

Nos. 1-97-4138 and 1-97-4139 (consolidated)

LORRAINE HARTON, )  Petition for Review

)  of an Order of the

Petitioner/Cross-Respondent, )  Illinois Human Rights

)  Commission

v. ) 

)

CITY OF CHICAGO DEPARTMENT OF PUBLIC )   

WORKS AND DEPARTMENT OF TRANSPORTATION, ) 

Respondent/Cross-Petitioner, )

)

and )

)

STATE OF ILLINOIS DEPARTMENT OF )

HUMAN RIGHTS and STATE OF ILLINOIS ) 

HUMAN RIGHTS COMMISSION, )   

Respondents/Cross-Respondents. )   

JUSTICE HOFFMAN delivered the opinion of the court:

Lorraine Harton brought an employment discrimination claim against her employer, the City of Chicago (the City).  The Illinois Human Rights Commission (the Commission) ordered the City to cease and desist from future discrimination, clear Harton's employment records of reference to the discrimination suit, and pay Harton limited attorney fees.  Harton appeals the Commission's finding that she was not entitled to back pay and from its limited award of attorney fees.  The City appeals from the Commission's order that it pay Harton's attorney fees.  The appeals have been consolidated.

On November 16, 1990, the Department of Human Rights (the Department) issued a "Complaint of Civil Rights Violation" on Harton's behalf, alleging that the City discriminated against her on the basis of physical handicap when it denied her a promotion and failed to provide her with an accommodation.  An initial hearing on the complaint was held on June 9 through June 12, 1992, before Administrative Law Judge Michael Evans (ALJ).  The evidence presented at that hearing established the following.

Harton, who is blind, began working for the City as a typist in 1975.  Her title changed several times over the years, but her duties remained essentially the same.  They included answering telephones, typing messages, and answering employment verification requests and questions regarding bid applications.

Early in 1987, Harton submitted written bid applications for two positions, principal clerk and head clerk, with the 50/50 Sidewalk Program (Program) in the City's Department of Public Works.  As Harton does not appeal the Commission's finding that she had not established a 
prima
 
facie
 case of discrimination with regard to the head clerk position, this court need only consider evidence relevant to the principal clerk position.

Harton was placed on a list of qualified applicants for the principal clerk position and was interviewed by Ronald Eisen, the Program's engineer and supervisor.  Harton testified that, when she inquired, Eisen informed her the job was not computerized and that she would not be provided with a reader to assist her with job duties.  He also told her "[y]ou never get" reasonable accommodations.  Eisen testified that he described the job duties to Harton, who then asked if she could just answer telephones and act as a receptionist.  Eisen did not contact any agencies for the visually impaired to determine if any accommodations were available which could assist Harton in performing the principal clerk's duties, nor did he attempt to secure the services of a reader for her.

Eisen testified that the principal clerk's main job duty was to process petitions for sidewalk repairs.  This required the clerk to record information from the petitions onto maps and ledgers, transfer information onto petitions from "field sheets" and postcards, and file petitions and related paperwork.  The principal clerk was also responsible for responding to telephone or in-person inquiries regarding the status of petitions, which required retrieving information from the files.  Eisen estimated the principal clerk spent 80 to 90% of his time dealing with documents and retrieving information.

Harton testified she believed she could have performed the job with the use of a computer capable of producing maps and graphs for the visually impaired and of printing documents in both braille and print form.  She testified she would be able to read printed material with an Optacon, a device which translates written material into a series of raised pins on a fingerplate, and complete forms on a typewriter using overlay sheets.  According to Harton, she was able to locate streets in Chicago by using a street guide printed in braille.

Following that initial hearing, the ALJ issued a Recommended Liability Determination (RLD), in which he found that Eisen never investigated the possibility of providing accommodations to Harton and that, because of her blindness, he never considered hiring her.  He found that Harton had established a 
prima
 
facie
 case of discrimination, in response to which the City had articulated a legitimate, nondiscriminatory reason for its actions, namely that a more qualified candidate was selected.  The ALJ went on to find that Harton had proven by a preponderance of the evidence that the City's articulated reason was pretextual.

Although the ALJ found that, "for purposes of establishment of a 
prima
 
facie
 case," Harton had established she could perform the principal clerk job with reasonable accommodation, he also expressed "serious doubts" as to whether she could perform all aspects of the job.  He concluded that an award of damages was "premature" and instructed the parties to conduct an investigation into the types of accommodations available.

At an April 30, 1993, status date, the ALJ scheduled an "evidentiary hearing on damages" for February 22 and 23, 1994.  He instructed the parties to limit their evidence to that of accommodations available at the time of the hearing.  After the hearing was scheduled, Harton retired from the City.  Thereafter, the City filed a motion to modify the April 30 order, seeking to change the scope of the evidence allowed at the hearing.  Both parties agreed that evidence of accommodations available in 1994 was no longer appropriate as Harton's retirement made the issue of job instatement moot.  Harton argued, however, that she should be awarded back pay without further hearings because the ALJ had already determined liability.

The ALJ granted the City's motion and changed the scope of the evidence at the hearing to include evidence of accommodations available from the date Harton applied for the principal clerk position through the date she retired from the City.  The hearing was rescheduled for February 21 and 22, 1995.  When the City failed to appear on February 21, the ALJ allowed Harton to present her evidence.

The City subsequently moved to strike the testimony presented in its absence at the February 21 proceedings, explaining that it failed to appear on that date because it had mistakenly believed the hearing was scheduled to begin February 22.  The ALJ ruled that the evidence presented on February 21, 1995, would be allowed to stand but scheduled an additional hearing for April 25, 1996, at which the City would be allowed to present its evidence.

The evidence presented by the parties at the February 21, 1995, and April 25, 1996, hearings was as follows.  William Hafer, an attorney and hearing officer, and Annette Nowakowski, an attorney, testified on Harton's behalf regarding methods they used in the workplace to accommodate their blindness.  These methods included: dictating for a typist; using audio and braille research materials; stockpiling written material until a reader was available; using braille paper, calculators and file labels; and using braille key sheets to fill out forms on a typewriter.

Harton submitted the evidence deposition of Robert DeYoung, also blind, who testified regarding technological aids he had used during his academic and professional career.  These aids included a computer with a speech synthesizer, special software programs and a braille printer; a Versabraille machine, which stored information and displayed it in braille; a Kurzweil Reading Machine, which scanned printed material and read it aloud; an Optacon; and a labeller capable of producing braille labels.  None of these technologies had the capability of reading graphics, colors or handwritten material.  The most common method by which DeYoung accessed handwritten material in 1987 was the use of a reader.

After being qualified as an expert, Patricia Walker testified for Harton regarding adaptive technology available to assist the visually impaired.  This technology included: speech synthesizers, which enable a computer to read the contents of its screen aloud to its user; braille output systems, which display the contents of the computer screen in braille; scanners capable of scanning typewritten documents into a computer; braille embossers capable of printing computer documents in braille; and a software package that enables the visually impaired to create and complete forms.

The City presented the testimony of Sue Melrose and Duane Christianson, both blind, who were qualified as experts with respect to accommodating the visually impaired in the workplace.  In 1993, Melrose and Christianson each conducted job assessments to determine whether a person who was blind could have performed the duties of a principal clerk in 1987.  Both visited the job site and met with supervisors to discuss the tasks involved, but neither met with Harton when conducting their assessments.

Melrose and Christianson each concluded that a person who was blind could not have performed the duties of the principal clerk in 1987 even with accommodation, citing the large amount of handwriting and the maps involved.  Both testified that no technological aid existed for effectively reading handwriting.  Christianson also testified that raised line maps would not make the job accessible to a person who was blind because the maps also contained handwritten symbols and notes.  Both witnesses considered and rejected the possibility that technological aids, such as speech synthesizers, scanners, Optacons, and braille printers, could make the job accessible to a person who was blind.  They also rejected the possibility of a reader as a reasonable accommodation, concluding that, because of the vast amount of handwritten material involved, the reader's services would be needed so frequently that the reader would essentially be performing the job.  Christianson testified that he had not considered job restructuring because he could not conceive of a way it could be done.

At the conclusion of the second hearing, the ALJ issued a Supplemental Recommended Liability Determination (SRLD), in which he found that no practical combination of technology and job restructuring would have allowed a person who was blind to perform the principal clerk job in 1987.  The ALJ found that the City had discriminated against Harton when it did not attempt to accommodate her, but that she was not entitled to back pay because she could not have performed the job.  He recommended the City be ordered to clear Harton's employment records of reference to the discrimination action, to cease and desist from further discrimination, and to pay Harton reasonable attorney fees.

Harton then filed a petition requesting an award of $114,248.00 in attorney fees and $1,170.87 in costs.  The ALJ issued a Recommended Order and Decision in which he recommended the City be ordered to pay Harton $18,805.50 in attorney fees and $1,012.45 in costs and to provide the relief recommended in the SRLD.  The Commission declined to review the Recommended Order and Decision and adopted the order as its own.

When reviewing an administrative agency's decision, we must treat its factual findings and conclusions as 
prima
 
facie
 true and correct.  735 ILCS 5/3-110 (West 1996).  It is not our function to reweigh the evidence or substitute our judgment for that of the Commission on factual matters.  
Lake Point Tower, Ltd. v. Human Rights Comm'n
, 291 Ill. App. 3d 897, 902, 684 N.E.2d 948 (1997).  Therefore, we must affirm factual findings and conclusions unless we find them to be against the manifest weight of the evidence, which occurs only when the opposite conclusion is clearly evident.  775 ILCS 5/8-111 (West 1996); 
Cisco Trucking Co., Inc. v. Human Rights Comm'n
, 274 Ill. App. 3d 72, 75, 653 N.E.2d 986 (1995).  This court does, however, exercise independent review over conclusions of law and statutory construction.  
Christ Hospital & Medical Center v. Human Rights Comm'n
, 293 Ill. App. 3d 105, 110, 687 N.E.2d 1090 (1997).

Illinois courts have adopted a three part analysis for analyzing employment discrimination claims brought under the Act.  
Zaderaka v. Illinois Human Rights Comm'n
, 131 Ill. 2d 172, 178-79, 545 N.E.2d 684 (1989).  Under this analysis, the complainant must first establish a 
prima
 
facie
 case of unlawful discrimination, after which a rebuttable presumption of discrimination arises.  The employer can rebut this presumption by offering a legitimate, nondiscriminatory reason for its actions.  
Zaderaka
, 131 Ill. 2d at 178-79.  Once the employer articulates such a reason, the complainant is required to prove, by a preponderance of the evidence, that the reason is merely a pretext for discrimination rather than the true reason for the employer's actions.  
Zaderaka
, 131 Ill. 2d at 179.

In order to establish a 
prima
 
facie
 case of handicap discrimination, a complainant must prove that: (1) she is handicapped as defined within section 1-103(I) of the Act; (2) an adverse job action was taken against her because of the handicap; and (3) her handicap is unrelated to her ability to perform the functions of the job in question.  
Lake Point Tower
, 291 Ill. App. 3d at 903.  A handicap is defined under the Act as:

"a determinable physical or mental characteristic of a person *** which may result from disease, injury, congenital condition of birth or functional disorder and which characteristic *** is 
unrelated to the person's ability to perform the duties of a particular job or position
." (Emphasis added).  775 ILCS 5/1-103(I)(1) (West 1996).

Therefore, a 
prima
 
facie
 case of handicap discrimination twice contains the requirement that a complainant must have the ability to perform the duties of the job in question.

Harton's ability or inability to perform the duties of the principal clerk is central to our resolution of this case.  In this procedurally and factually unusual case, we are faced with what, at first glance, appear to be contradictory factual findings on that issue.  In the RLD, the ALJ found that Harton had established she could have performed the job with accommodation, and in his SRLD, he found that no available accommodation would have enabled her to perform the job.

The Department and the Commission (referred to herein collectively as the State) contend that the ALJ did, in fact, make contradictory findings, the former for the purpose of establishing liability and the latter for the purpose of establishing damages.  The State urges us to affirm both findings as adopted by the Commission and the Commission's order that, while the City discriminated against Harton entitling her to some relief, she was not entitled to back pay as she could not have performed the duties of the principal clerk.

Harton also contends the ALJ made contradictory findings.  She argues, however, that the supplemental hearing, which resulted in the finding that she could not perform the job, should never have been conducted.  That hearing, she claims, was intended only to determine what accommodations would be ordered when she was instated as principal clerk and became unnecessary when she retired and no longer sought job instatement as a remedy.  Harton contends she was entitled to an award of back pay at that time because the ALJ had already determined the City's liability.  Alternatively, Harton argues that the City's expert testimony at the supplemental hearing should have been stricken and that, even if we consider that testimony, the ALJ's finding following that hearing was against the manifest weight of the evidence.  Harton asks us to reverse the findings that she could not perform the job and was not entitled to back pay.

The City contends that the ALJ did not make a "definitive finding" regarding Harton's ability to perform the principal clerk's duties at the conclusion of the initial hearing.  Rather, it argues that the ALJ properly ordered a supplemental hearing because he had "serious doubts" as to that issue.  The City asks us to affirm the ultimate finding that Harton could not perform the job and, based on that finding, reverse all relief granted by the Commission.

A close examination of the ALJ's findings in the RLD is warranted.  The RLD contains a lengthy discussion as to whether Harton was handicapped within the meaning of the Act.  The ALJ properly observed that, if she was not, she was not protected by the Act and could not establish a 
prima
 
facie
 case of discrimination.  He noted that Harton had presented some evidence that she could perform the principal clerk job with accommodation and that such evidence was "unrebutted and therefore accepted."  However, the ALJ also stated: "That is not to suggest that [Harton] could have performed all aspects of the principal clerk position.  There are serious doubts about that."  The ALJ went on to conclude that, after Harton requested accommodation: 

"[The City] did nothing in response, and [Harton] was denied the opportunity to show [the City] that she could perform a more challenging position.  The Act and the procedural rules were designed to give handicapped people that opportunity.  On these facts, it would undercut the whole purpose of the Act to allow [the City] to prevail on the issue of [Harton]'s qualifications for the principal clerk position.  For purposes of a 
prima
 
facie
 case, the conclusion reached here is that [Harton]'s physical condition did not prevent her from doing the principal clerk job, if she received reasonable accommodation.  Therefore, [Harton] is 'handicapped' within the meaning of the Act."

The ALJ observed that, while back pay and job instatement would normally have been appropriate remedies at that point, such remedies were "premature" since he had a "lingering doubt" as to whether Harton could perform the job even with accommodation.  Consequently, the ALJ ordered an investigation into the issue, noting that, if it was discovered Harton could have done the job with accommodation, she would be instated and awarded back pay but that, if it was discovered she could not have done the job with accommodation, "it is difficult to see how she has been damaged."

It is clear, as the City contends, that the ALJ did not make a "definitive finding" regarding Harton's ability to perform the duties of the principal clerk.  He clearly contemplated the possibility that a further investigation into the issue might reveal Harton could not have performed those duties even with accommodation.  The finding that, "for purposes of a 
prima
 
facie
 case," Harton could perform the job with accommodation was not based on a factual finding that she could actually do the job. It was based on a legal misconception that Harton was excused from establishing that she could perform the job, at least at that stage, because the City had prevented her from establishing that fact by denying her the opportunity to attempt the job.  Our conclusion that the ALJ made no definitive factual finding is supported by the SRLD, where the ALJ stated that the RLD contained "no finding with regard to [Harton]'s ability to perform the job of principal clerk" because "the evidence presented at the original public hearing was insufficient to support a finding on that issue."

On a related note, we must address Harton's argument that the ALJ abused his discretion by ordering the supplemental hearing on the issue of accommodations.  Harton's argument is premised on the assumption that the ALJ had already determined the issue of liability.  By allowing the City to present additional evidence regarding her ability to perform the job duties, she argues, the ALJ essentially granted the City a new trial.  As we have just concluded, though, the ALJ made no definitive finding regarding Harton's ability to perform the job at the conclusion of the initial hearing.  The ALJ was clearly dissatisfied with the proof presented by both parties on a key issue and ordered that the parties gather and present additional evidence.

Neither the Act nor the regulations specifically authorize an ALJ to order such a supplemental hearing.  Section 8A-103(D) of the Act, however, authorizes the Commission, on its own motion or at the written request of a party, to remand a case to an ALJ for rehearing or additional evidence.  775 ILCS 5/8A-103(D) (West 1996).  Because the Commission had the authority to remand the case for the taking of additional evidence if it so chose, it was within the Commission's discretion to consider the additional evidence in this case.  Therefore, we find no error here.  Nor do we believe the ALJ erred by allowing the City to present its evidence even though it failed to appear on the original date for the supplemental hearing.

We next consider Harton's argument that the testimony of the City's expert witnesses should have been stricken.  The ALJ ruled that the parties could only present evidence at the supplemental hearing going to the issue of whether Harton could perform those duties of the principal clerk which had been established at the initial hearing.  The parties were not to present any evidence of additional duties.  When conducting their job assessments, Melrose and Christianson considered several documents which the City had unsuccessfully attempted to introduce into evidence at the initial hearing as documents the principal clerk was responsible for processing.  This fact, however, does not require that the testimony of the witnesses be stricken as both witnesses testified that their opinions regarding Harton's ability to perform the job would not have changed if they eliminated the documents in question from their consideration.

Harton similarly contests the finding that the principal clerk was required to read handwriting and maps quickly in order to respond to telephone inquiries.  She contends there was no evidence at the initial hearing that such inquiries had to be responded to quickly and that expert testimony to that effect amounted to evidence of new duties.  We do not believe the expert's testimony that such duties, which had been established at the initial hearing, needed to be performed quickly constituted impermissible evidence of new duties.

We next consider Harton's argument that the finding that no combination of accommodations and job restructuring would have enabled a person who was blind to perform the duties of a principal clerk in 1987 was against the manifest weight of the evidence.  

The City presented the testimony of two experts in the field of accommodating the visually impaired in the workplace.  Each expert conducted an assessment of the principal clerk position as it existed in 1987 and determined that the position could not have been made accessible to a person who was blind.  While Harton's witnesses testified regarding possible methods of accommodation, none of the witnesses had evaluated the principal clerk position or offered any opinion as to whether Harton could perform it.  Consequently, the ALJ's finding, in the SRLD, that a person who was blind could not perform the duties of the principal clerk was not against the manifest weight of the evidence.

Harton makes numerous claims that the testimony of the City's witnesses is entitled to little weight because it is unsupported by facts and "filled with conclusions."  She claims that Melrose considered only technological accommodating devices and that neither expert considered combining methods of accommodation.  Our review of the witness' testimony proves these claims to be inaccurate.  Harton's argument that neither expert considered the possibility of job restructuring is also unsupported by the record.  Christianson testified that he did not consider restructuring the job because he could not conceive of any effective way to do it.

Harton also contends the finding that a reader was not a reasonable accommodation was against the manifest weight of the evidence.  She quotes a portion of the SRLD in which the ALJ stated "it would be easier" for the reader to perform the job duties.  Harton correctly argues that an employer cannot refuse to hire a person who is handicapped on the basis that it would be easier to hire a person who is not handicapped.  The ALJ, however, concluded a reader was not a viable option because of the frequency with which his services would be needed. The Joint Rules of the Department of Human Rights and the Human Rights Commission (Joint Rules) provide that no employer is required to hire two full-time employees to perform one job.  56 Ill. Adm. Code §2500.40(b) (1996).

We have concluded that the finding that Harton could not have performed the duties of the principal clerk even with accommodation was not against the manifest weight of the evidence.  We must now determine whether, despite that finding, the Commission had the authority to award any relief under the Act.

The Act provides that, "upon finding a civil rights violation," the Commission can, 
inter
 
alia
, enter a cease and desist order, award damages to the complainant, and require the respondent to pay all, or a part, of the complainant's reasonable attorney fees.  775 ILCS 5/8A-104 (West 1996).  The powers of administrative agencies such as the Commission "are strictly confined to those granted in their enabling statutes."  
City of Chicago v. Fair Employment Practices Comm'n
, 65 Ill. 2d 108, 115, 357 N.E.2d 1154 (1976).  By its clear language, the Act only vests the Commission with the power to award relief upon a finding of a civil rights violation.

An employer commits a civil rights violation under the Act when it acts on the basis of unlawful discrimination with respect to hiring or promotion.  775 ILCS 5/2-102(A) (West 1996).  Unlawful discrimination is "discrimination against a person because of his or her *** handicap *** as *** defined" in the Act.  775 ILCS 5/1-

103(Q) (West 1996).  As discussed earlier, a complainant is handicapped under the Act only if her physical condition is unrelated to her ability to perform the duties of the job in question.  775 ILCS 5/1-103(I)(1) (West 1996).  Consequently, a complainant who cannot, by reason of a physical condition, perform the duties of the job in question even with accommodation is not handicapped within the meaning of the Act.  See 
Whipple v. Department of Rehabilitation Services
, 269 Ill. App. 3d 554, 646 N.E.2d 275 (1995).

From the finding that Harton could not have performed the duties of the principal clerk even with accommodation, it necessarily follows that she is not handicapped within the meaning of the Act and that the City's refusal to consider her for that position, even if based on her blindness, did not rise to the level of "unlawful discrimination" as that phrase is defined in section 1-103(Q) (775 ILCS 5/1-103(Q) (West 1996).  Since the City did not unlawfully discriminate against Harton, it committed no civil rights violation which could form the predicate for the Commission's award of relief in this case.

The State, nevertheless, argues that an employer commits a 
per
 
se
 civil rights violation under the Act when it fails to investigate the possibility of accommodating an applicant, even if the applicant ultimately could not have performed the job with accommodation.  In support of its position, the State cites to the Joint Rules, which require that an employer explore "[r]easonable accommodation of a person's physical or mental limitations" and provide a reasonable accommodation unless it would be prohibitively expensive or unduly disruptive.  56 Ill. Adm. Code §2500.20(d), 2500.40(a) (1996).  The State and Harton each cite case law in support of the contention that the City's refusal to hire Harton without considering her ability to perform the job or the possibility of accommodation constitutes a violation of the Act.  We disagree with the State's 
per
 
se
 argument for several reasons, and find the cases cited by the State and Harton in support of the proposition to be distinguishable on their facts.

In each of the cases cited, there was evidence that the complainant could actually have performed the job in question.  See 
Illinois Department of Corrections v. Illinois Human Rights Comm'n
, 298 Ill. App. 3d 536, 699 N.E.2d 143 (1998); 
City of Belleville, Board of Police and Fire Commissioners v. Human Rights Comm'n
, 167 Ill. App. 3d 834, 522 N.E.2d 268 (1988); 
Board of Trustees v. Human Rights Comm'n
, 138 Ill. App. 3d 71, 485 N.E.2d 33 (1985).
  That is not the case here.  Furthermore, in addition to the sections of the Joint Rules cited by the State,  those rules also provide that "[i]n response to a discrimination charge involving a refusal to provide an accommodation," an employer can show that the applicant would be unqualified for the job even with accommodation.  56 Ill. Adm. Code §2500.40(d) (1996).  Although the State argues that an employer cannot defend an action on that ground where it did not investigate possible accommodations, it offers no support for that contention in either the Act or the Joint Rules.  Even assuming arguendo that the State's 
per
 
se
 violation theory finds support in its interpretation of the Joint Rules, we would still be compelled to hold that the Commission lacked the power to award any relief in this case.

Although the Commission is authorized to promulgate rules, it may not promulgate rules which are inconsistent with the provisions of the Act.  775 ILCS 5/8-102(E) (West 1996).  Statutes may not be altered or added to by the exercise of an administrative agency's power to make rules and regulations thereunder.  
Northern Illinois Automobile Wreckers & Rebuilders Ass'n v. Dixon
, 75 Ill. 2d 53, 60, 387 N.E.2d 320 (1979); 
Ruby Chevrolet, Inc. v. Department of Revenue
, 6 Ill. 2d 147, 151, 126 N.E.2d 617 (1955).  Consequently, to the extent that the Joint Rules might be interpreted as creating a civil rights violation for behavior which would not constitute a violation under the Act, the rules would be unenforceable.

Finally, the State contends that, if we rule that no liability exists in a situation such as this, we will discourage employers from investigating the possibility of accommodating job applicants with disabilities.  We certainly do not wish to be interpreted as suggesting that employers should neglect to explore the availability of reasonable accommodations which would enable an applicant with a disability to perform the duties of a job.  Failure to do so might well expose an employer to liability under the Act if it is subsequently determined that a reasonable accommodation would have enabled the applicant to perform the job despite her disability.  Nevertheless, we are bound by the clear language of the Act, which does not authorize the Commission to award relief of any kind absent a predicate civil rights violation. Once the Commission found that Harton could not have performed the duties of the principal clerk even with accommodation, it lacked power under the Act to award any relief and had no alternative but to dismiss the complaint against the City.  Accordingly, we vacate that portion of the Commission's order purporting to grant relief under the Act, specifically its order upon the City to: 1) cease and desist from further discrimination, 2) clear Harton's employment records, and 3) pay Harton's attorney fees; and we remand this cause to the Commission with instructions that it enter an order dismissing Harton's complaint.

Order vacated in part; cause remanded with directions.

McNAMARA and WOLFSON, JJ., concur.